UNITED STATES DISTRICT COURT **09** CV **9889**
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC CRUISE, Participant in the Rogers Fence Company, Inc. Retirement Plan, for the Losses Suffered By the Plan and on Behalf of All Other Similarly Situated ERISA Plans and Plan Participants, | Civil Action No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE** |
| Plaintiff, | **RETIREMENT INCOME** |
| -against- | **SECURITY ACT** |
| PRINCIPAL GLOBAL INVESTORS, LLC, PRINCIPAL FINANCIAL GROUP, INC., PRINCIPAL LIFE INSURANCE COMPANY, and PRINCIPAL REAL ESTATE INVESTORS, LLC, |  |
| Defendants. | |

RECEIVE

DEC - 2 2009

U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, for his Class Action Complaint, alleges the following upon personal

knowledge as to himself and his own acts, and as to all other matters upon information

and belief, based upon the investigation made by his attorneys, which included a review

of defendants' marketing materials, website materials, and other materials and

communications directed at Plaintiff and other investors, Securities and Exchange

Commission ("SEC") filings, federal court filings, news reports and other publicly

available materials.

## I.   PRELIMINARY STATEMENT

1.      This Complaint arises from the disregard by Defendants Principal Global

Investors, LLC, Principal Financial Group, Inc., Principal Life Insurance Company, and

Principal Real Estate Investors, LLC (collectively, "Principal") of the best interests of

investors in the Principal U.S. Property Account (the "Property Account," the "Account"

1

or the "Fund"), a real estate separate account managed by Principal, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). Principal breached its fiduciary duties under ERISA by managing the investment of the retirement assets in the Property Account inconsistently with the Property Account's stated objective to maintain adequate liquidity to provide for daily withdrawals. Principal offered the Property Account to retirement plans throughout the country as a "low risk" retirement savings option with a "strong focus on liquidity." As a result of its mismanagement, the Property Account maintained insufficient liquidity to meet the withdrawal requests of participants who had invested in the Fund and became high risk by virtue of having insufficient liquidity. On September 26, 2008, Principal imposed a withdrawal freeze, Principal closing the Property Account to withdrawals and locking up participants' retirement savings in the Fund. By preventing ERISA plans and plan participants from withdrawing their money from the Property Account, Principal forced these investors to sustain losses as the real estate in the Fund declined in value.

2. As of the date of this Complaint, Principal has not yet allowed investors to withdraw their money from the Property Account. Instead, Principal has instituted a "withdrawal queue" (the "Withdrawal Queue"), and promised to honor the withdrawal requests in the event that sufficient liquidity should become available. However, even if Principal begins to honor these withdrawals in the future, investors have already been subjected to losses as the value of the Property Account has steeply declined from a per share value of $704.32 on September 26, 2008 to $443.98 on November 30, 2009.

3. Contrary to its statements about the Property Account's low-risk profile and strong focus on liquidity, Principal's investment practices maintained insufficient

liquidity in the Fund to meet daily withdrawal requests, which is imprudent in light of the Fund's stated objective to maintain liquidity.

4.    Principal's imprudent actions have caused the ERISA plans that offered the Property Account for which Principal served as the investment fiduciary to suffer potentially hundreds of millions of dollars of losses.

5.    Principal's conduct was a gross dereliction of its fiduciary duties under ERISA. Accordingly, Plaintiff alleges that Principal, as the investment fiduciary for the Property Account for ERISA retirement plans throughout the country, and Principal's employees who were responsible for managing the assets invested in the Property Account, breached their duties of prudence, loyalty, and exclusive purpose under ERISA §404(a) by recklessly and imprudently investing the assets of the Property Account in a manner contrary to the stated objectives of the Property Account.

6.    This action is brought by Plaintiff Eric Cruise, a participant in the Rogers Fence Company, Inc. Retirement Plan, to recover the losses suffered by Plaintiff's ERISA plan and on behalf of a class consisting of all other similarly situated ERISA plans and plan participants that have attempted to withdraw their investment from the Property Account, and have instead been placed into the Withdrawal Queue. All of these ERISA plans (the "Plans") were subject to, and affected by, Principal's conduct in the same manner and with the same effect. Plaintiff seeks losses to these plans for which Principal and Principal's employees responsible for managing the assets in the Property Account are liable pursuant to ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). In addition, under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks other equitable relief from Principal, including, without limitation,

3

injunctive relief and, as available under applicable law, constructive trust, restitution, disgorgement of fees, equitable tracing, and other monetary relief.

7.   ERISA §§ 409(a) and 502(a)(2) authorize ERISA plan participants such as Plaintiff to sue in a representative capacity for losses suffered by his ERISA plan as a result of breaches of fiduciary duty. Pursuant to that authority, Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23 on behalf of ERISA plans that offered the Property Account as an investment option and suffered losses due to Principal's gross dereliction of its fiduciary duties under ERISA during the Class Period.

## II.   JURISDICTION AND VENUE

8.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1). The claims asserted herein are brought as a class action under Rule 23 of the Federal Rules of Civil Procedure.

9.   Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Principal can be found in this District, with offices located at, *inter alia*, 1155 Avenue of the Americas, New York, NY 10036, and 75 Rockefeller Center, New York, NY 10019.

## III.   THE PARTIES

### a.   Plaintiff

Plaintiff Eric Cruise ("Plaintiff"), a New York resident, is and has been a participant in Rogers Fence Company, Inc. Retirement Plan since March 2001. Through said Plan, Mr. Cruz invested in the Principal U.S. Property Separate Account in May 2008, relying upon the representations made on the Principal website which classified this investment as suited for investors with low risk tolerance. On October 14, 2008, Plaintiff Cruise

4

attempted to withdraw his investment from Principal's U.S. Property Separate Account, but was, and has been, unable to do so, as Principal has delayed payments of withdrawal requests, placing him into the Withdrawal Queue. Plaintiff has suffered substantial diminution in the value of his account as a result of his inability to withdraw such investment.

### b. Defendants

10. Defendant Principal Global Investors, LLC ("PGI") is a Delaware Limited Liability Company and is an affiliate of Defendant The Principal Financial Group. PGI is a fiduciary and/or a party-in-interest with respect to the Plans.

11. Defendant The Principal Financial Group, Inc. ("PFG") is a Delaware corporation, and directly and/or through its affiliates, Principal provides investment products and services, including the products and services provided by PGI to the Plans, and Principal is a fiduciary and/or a party-in-interest with respect to the Plans.

12. Defendant Principal Life Insurance Company ("Principal Life") is a wholly owned subsidiary of Principal operating as an insurance company. Principal Life is a fiduciary and/or party-in-interest with respect to the Plans.

13. Defendant Principal Real Estate Investors, LLC ("Principal Real Estate") is a Delaware limited liability company and an affiliate of Principal, acts as the investment advisor for the Property Account, and is a fiduciary and/or party-in-interest with respect to the Plans.

### IV. CLASS ACTION ALLEGATIONS

14. **Class Definition.** Plaintiff brings this action as a class action pursuant to Rules 23(a), (b)(1), (b)(2), and, in the alternative, (b)(3) of the Federal Rules of Civil

5

Procedure for the losses suffered by his plan, the Rogers Fence Company, Inc.

Retirement Plan, and the following class of persons similarly situated (the "Class"):

> All qualified ERISA plans and the participants and beneficiaries of those plans that invested directly or indirectly in the Principal U.S. Property Account between September 26, 2008 and the present (the "Class Period") that have suffered losses since they were placed in the Withdrawal Queue as a result of the Principal U.S. Property Account's failure to maintain adequate liquidity and imprudent investment strategy. Specifically excluded from the Class are the Individual Defendants herein, officers and/or directors of the Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which a Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party, other than qualified ERISA plans offered by Principal or any of its affiliates to its employees and which suffered losses due to investment in the Principal U.S. Property Account.

15.     **Numerosity.** The members of the class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that at least hundreds if not more ERISA qualified plans throughout the country with thousands of participants and beneficiaries, offered the Principal U.S. Property Account and had assets invested in the Principal U.S. Property Account during the Class Period that incurred losses as a result of the breaches of fiduciary duty alleged in the Complaint.

16.     **Commonality.** The claims of Plaintiff and the members of the Class have a common origin and share a common basis. The claims of all Class members originate from the same misconduct, breaches of duties and violations of ERISA, perpetrated by Defendants. Proceeding as a class is particularly appropriate here because the Principal

6

U.S. Property Account held assets in a commingled account, in which the assets of every plan that invests in the Property Account are pooled, and, therefore, Principal's imprudent actions affected all plans that invested in the Property Account in the same manner.

17.     Furthermore, common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. The many questions of law and fact common to the Class include:

a.     Whether Defendants breached their fiduciary duties under ERISA;

b.     Whether Defendants deviated from the stated objectives and philosophies of the Property Account when they failed to ensure the plan would have adequate liquidity;

c.     Whether Defendants' acts proximately caused losses to the plans at issue; and

d.     Whether Defendants are equitably liable to the Class for disgorgement of ill-gotten gains from imprudent fiduciary conduct, for equitable tracing, for restitution, for the imposition of a constructive trust, and/or for other equitable or injunctive relief.

18.     **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class because: (A) Plaintiff seeks relief for the losses suffered by his Plan and on behalf of all similarly situated Plans and their participants and beneficiaries in the Class pursuant to ERISA § 502(a)(2), and, thus, his claims for the Plan's losses are not only typical of, but identical to, a claim under this section brought by any Class member; and (B) Plaintiff seeks relief under ERISA § 502(a)(3) on behalf of the Plans for equitable

7

relief, that would affect all Class members equally. If brought and prosecuted individually, each of the members of the Class would necessarily be required to prove the instant claims upon the same material and substantive facts, upon the same remedial theories and would be seeking the same relief.

19. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel that are competent and experienced in class action, complex, and ERISA litigation. Plaintiff has no interest antagonistic to or in conflict with those of the Class. Plaintiff will undertake to vigorously protect the interests of the absent members of the Class.

20. **Rule 23(b)(1)(A) & (B) Requirements.** Class action status in this ERISA action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

21. **Rule 23(b)(2) Requirements.** Certification under Rule 23(b)(2) is warranted because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

22. **Rule 23(b)(3) Requirements.** In the alternative, certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Class

predominate over any questions affecting only individual members and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

## V. THE PROPERTY ACCOUNT

23. The Property Account is an open-end, commingled, separate account fund invested primarily in real estate holdings.

24. The Property Account was typically offered to ERISA plan participants as an investment option in the participants' individual account plans.

25. Principal described the Property Account's investment philosophy as:

The Principal U.S. Property Account is a core real estate fund designed to have a low to moderate risk profile compared to other open-end real estate funds. This risk profile has two components: 1) a low to moderate real estate property risk profile; and 2) a low to moderate risk fund-level operating profile. Low to moderate real estate property risk is accomplished by investing primarily in well-leased properties on an unleveraged or low leverage basis. Low to moderate fund-level risk is accomplished by operating with a strong liquidity focus, client diversification, and limited fund-level obligations, such as forward commitments and fund level debt.

(Principal U.S. Property Account, 2007 Annual Report, attached hereto as Exhibit A, at

4.)

26. Principal stated that the three primary objectives of the Property Account were to:

1) maintain a well-diversified real estate portfolio that generally reflects the overall performance of the U.S. commercial real estate market;

**2) maintain appropriate liquidity so that clients can make daily contributions or withdrawals; and**

> 3) provide clients with private real estate returns that meet or exceed the National Council of Real Estate Investment Fiduciaries (NCREIF) Property Index. These returns are to be delivered at a risk level lower or equal to the NCREIF Property Index as measured by the volatility of the annual returns.

(2007 Annual Report, Exhibit A, at 2) (emphasis added).

27.    Principal marketed the Property Account to ERISA plans and their participants alternately as a "low risk" or "low to moderate risk" investment with a focus on maintaining strong enough liquidity to ensure daily contributions and withdrawals.

## VI.    THE ERISA PLANS

28.    Under the terms of the Property Account offered to the Plans, Principal was at all relevant times exclusively responsible for the management and control of the assets invested in the Property Account, and acted as the Property Account's Investment Manager, as that term is defined in Section 3(38) of ERISA.

29.    Numerous Plans invested in the Property Account as a low risk investment option for retirement savings. The Plans and the participants in the Plans directed billions of dollars of retirement savings into the Property Account.

## VII.    DEFENDANTS' FIDUCIARY STATUS

30.    ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions. Thus a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or

10

indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

31. Principal had exclusive control and authority over the management and investment of the Plans' assets that were invested in the Property Account.

32. Under ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii), Principal's exclusive control and authority over the management and investment of the Plan assets in the Property Account renders Principal an ERISA fiduciary to the Plans with respect to the management of these assets.

## VIII. FACTS BEARING ON FIDUCIARY BREACH

33. Principal had sole and exclusive investment discretion over the assets in the Property Account at all relevant times. Neither Plaintiff, other Class Members or any other fiduciary of the Plans in the Class had the discretion to direct the manner in which Principal invested any of the assets of the Property Account offered to Plaintiff's plan or any other plans included in the Class.

34. Principal represented that the Property Account was a "low risk" investment that would provide stable returns and enough liquidity that retirement funds in the Account would be accessible when needed. Principal marketed the Property Account to ERISA plans and ERISA plan participants saving for retirement alternately as a "low risk" or a "low to moderate risk" savings option that achieved low to moderate fund level risk by maintaining a strong liquidity focus. (2007 Annual Report, Ex. A, at 2; The Case for Real Estate, attached as Exhibit B, at 3.) Principal stressed in communications with

11

Plan participants that the Property Account was managed with a strong focus on liquidity, and assured potential investors that during its entire twenty-five year history, it had never failed to meet all redemption requests on a daily basis. (2007 Annual Report, Ex. A, at 4.)

35.    In its marketing materials, Principal assured prospective investors that the Property Account was a low to moderate risk investment even compared to other open-end real estate property funds, because of the Fund's focus on liquidity and limited fund level debt. (The Case for Real Estate, Ex. B, at 3.) Principal touted the Property Account as being suited for investors with a low risk tolerance for return volatility and leverage. Principal stated that the fund was designed to deliver its returns at a lower risk level or an equal risk level to the National Council of Real Estate Investment Fiduciaries Property Index. (The Case for Real Estate, Ex. B, at 3.)

36.    Collectively billions of dollars of retirement plan assets were invested in the Property Account. This money was pooled and commingled by Principal, and invested by Principal into the underlying real estate assets. Each participant was entitled to a pro rata share of the net value of the Account, based on how much each participant had contributed and adjusted by the change in the Account's value since the investment. As a result, Principal's imprudent management of the Property Account affected all of the Plans and participants that invested in the commingled Account in precisely the same manner.

37.    Principal disregarded the Property Account's focus on maintaining sufficient liquidity to meet withdrawal requests on a daily basis.

38.    As the value of the real estate market in the United States began to decline in 2008, the value of the real estate in the Property Account began to decline. As news of

12

the worsening real estate market spread, Plans and participants began trying to transfer their money out of the Property Account. On information and belief, contributions to the Property Account, which had been a major source of liquidity, also began to decline in 2008.

39. In the face of a rapidly declining real estate market in September, 2008, Principal decided to close the property account to withdrawals, locking up the participants' and Plans' retirement savings in the Property Account. Principal would later explain that:

> On September 26, 2008, Principal Life Insurance Company ("Principal Life") applied a limitation which delays the payment of withdrawal requests and provides for payment of such requests on a pro rata basis (a "Queue") as cash becomes available for distribution, as determined by Principal Life. The implementation of the Queue does not change the Account's strategy of seeking to achieve good risk-adjusted returns through investment in core real estate. On March 31, 2009, the outstanding balance in the Queue was $1,035.5 million or 24.0% of the net asset value of the Account.

(Principal U.S. Property Account, Quarterly Flash Report for the period ending March 31, 2009, attached hereto as Exhibit C, at 2.)

40. On information and belief, Principal gave no warning to participants or Plans that it planned to freeze withdrawals from the Property Account.

41. Since instituting the Withdrawal Queue, Principal has made several changes to the written materials it circulates about the Property Account. For example, in the Property Account's 2007 Annual Report, Principal explained that: "Low to moderate fund-level risk is accomplished by operating with a strong liquidity focus, client diversification, and limited fund-level obligations, such as forward commitments and fund level debt." (2007 Annual Report, Ex. A, at 2.) However, in the 2008 Annual

13

Report, which was not released until after the September 26, 2008 withdrawal freeze and imposition of the Withdrawal Queue which prevented Plans or participants from accessing their retirement savings in the Account, Principal claimed that: "Low to moderate fund level risk is accomplished by operating with a strong focus on client diversification and by managing fund-level obligations." (Principal U.S. Property Account 2008 Annual Report, attached hereto as Exhibit D, at 2.) This new language highlights the extent to which Defendants deviated from the Fund's stated "strong liquidity focus." (2007 Annual Report, Ex. A, at 2; The Case for Real Estate, Ex. B, at 3.)

42. Principal's conduct with respect to the Property Account was negligent and a clear dereliction of its duties as an ERISA investment fiduciary. The conduct was manifestly imprudent because, among other reasons:

- Principal did not invest the participants' and Plans' assets in the Property Account in a manner consistent with the Property Account's stated objectives and philosophy;

- Principal did not maintain adequate liquidity in the Property Account to meet the needs of the participants despite stating that the Account was low to moderate risk because of its strong focus on liquidity; and

- Principal failed to maintain adequate liquidity in the Fund despite stating that its objective was to ensure that participants could make daily withdrawals, and instead has now instituted a Withdrawal Queue preventing any Plans or Plan participants from accessing their

14

> retirement assets (regardless of whether they want to retire or simply
> transfer the assets to a safer investment option).

43.     A prudent Investment Manager acting prudently, loyally, and for the exclusive benefit of plan participants, as required by ERISA, would not have gambled with participants' retirement savings as Principal did in this case, and instead would have adhered to the stated liquidity-oriented objectives of the Property Account.

## IX.   RELEVANT LAW

44.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), provides, in pertinent part, that a civil action may be brought by a participant for relief under ERISA § 409, 29 U.S.C. § 1109.

45.     ERISA § 409(a), 29 U.S.C. § 1109(a), "Liability for Breach of Fiduciary Duty," provides, in pertinent part,

> any person who is a fiduciary with respect to a plan who breaches any
> of the responsibilities, obligations, or duties imposed upon fiduciaries
> by this subchapter shall be personally liable to make good to such plan
> any losses to the plan resulting from each such breach, and to restore
> to such plan any profits of such fiduciary which have been made
> through use of assets of the plan by the fiduciary, and shall be subject
> to such other equitable or remedial relief as the court may deem
> appropriate, including removal of such fiduciary.

46.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes individual participants to seek equitable relief from defendants, including, without limitation, injunctive relief and, as available under applicable law, constructive trust, restitution, and other monetary relief.

47.     ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), provides, in pertinent part, that a fiduciary shall discharge his duties with respect to a plan

solely in the interest of the participants and beneficiaries, for the exclusive purpose of

providing benefits to participants and their beneficiaries, and with the care, skill,

prudence, and diligence under the circumstances then prevailing that a prudent man

acting in a like capacity and familiar with such matters would use in the conduct of an

enterprise of a like character and with like aims.

48.     These fiduciary duties under ERISA §§ 404(a)(1)(A) and (B) are referred

to as the duties of loyalty, exclusive purpose and prudence and are the "highest known to

the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.2 (2d Cir. 1982). They entail,

among other things:

> (a) The duty to conduct an independent and thorough investigation
> into, and to continually monitor, the merits of all the investment
> alternatives of a plan, including in this instance the Property Account;
>
> (b) The duty to avoid conflicts of interest and to resolve them
> promptly when they occur. A fiduciary must always administer a plan
> with an "eye single" to the interests of the participants and
> beneficiaries, regardless of the interests of the fiduciaries themselves
> or the plan sponsor; and
>
> (c) The duty to disclose and inform, which encompasses: (1) a
> negative duty not to misinform; (2) an affirmative duty to inform when
> the fiduciary knows or should know that silence might be harmful; and
> (3) a duty to convey complete and accurate information material to the
> circumstances of participants and beneficiaries.

49.     According to DOL regulations and case law interpreting this statutory

provision, in order to comply with the prudence requirement under ERISA §404(a), a

fiduciary must show that: (a) he has given appropriate consideration to those facts and

circumstances that, given the scope of such fiduciary's investment duties, the fiduciary

knows or should know are relevant to the particular investment or investment course of

action involved, including the role the investment or investment course of action plays in

16

that portion of the plan's investment portfolio with respect to which the fiduciary has investment duties; and (b) he has acted accordingly.

50.  Again, according to DOL regulations, "appropriate consideration" in this context includes, but is not necessarily limited to:

- A determination by the fiduciary that the particular investment or investment course of action is reasonably designed, as part of the portfolio (or, where applicable, that portion of the plan portfolio with respect to which the fiduciary has investment duties), to further the purposes of the plan, taking into consideration the risk of loss and the opportunity for gain (or other return) associated with the investment or investment course of action; and

- Consideration of the following factors as they relate to such portion of the portfolio:

  o  The composition of the portfolio with regard to diversification;

  o  The liquidity and current return of the portfolio relative to the anticipated cash flow requirements; and

  o  The projected return of the portfolio relative to the funding objectives.

51.  As set forth herein and specifically in the Count I of the Complaint, Principal failed abysmally in this regard, and generally, in its duty to manage the assets of the Property Account prudently, loyally, and in the best interests of the Plan participants.

52.  Plaintiff therefore brings this action under the authority of ERISA § 502(a)(2) for relief under ERISA § 409(a) to recover losses sustained by the Property Account arising out of the breaches of fiduciary duties by the Defendants for violations under ERISA § 404(a)(1).

## X.   LOSS CAUSATION

53.   The participants and plans that invested in the Property Account suffered hundreds of millions of dollars in losses because Principal failed to maintain adequate liquidity in the Fund, in breach of Defendants' fiduciary duties.  By failing to maintain adequate liquidity, Principal increased the risk to participants and plans that invested in the Property Account that, in the event of a general contraction in the real estate market, that the real property assets of the Property Account could not be liquidated to meet investors' redemption requests without causing substantial losses to remaining investors —an event that has actually occurred.

54.   All members of the class are participants or plans who have attempted to withdraw all or some of their funds from the Property Account but have been prevented from doing so by Principal's imposition of the Withdrawal Queue.  These investors have been damaged because they have been subjected to losses as the Property Account has rapidly declined in value since the imposition of the Withdrawal Queue.  Had Principal honored these withdrawal requests, then these investors would not have been exposed to the dramatic losses the Property Account has suffered since September 26, 2008.

55.   Defendants are liable for these losses because they were caused by Defendants' breaches of fiduciary duty, including but not limited to, their imprudent decision to disregard the investment strategy of the Property Account by failing to maintain adequate liquidity in the Property Account, a decision which was imprudent under the circumstances presented here.

56.   Had the Defendants properly discharged their fiduciary duties, the Plans that offered the Property Account and the Plan participants that invested in the Property

18

Account would have avoided some or all of the losses that they have suffered since being placed into the Withdrawal Queue.

## XI.   CLAIMS FOR RELIEF

### COUNT I

### AGAINST PRINCIPAL, PRINCIPAL LIFE, PRINCIPAL GLOBAL ADVISORS, AND PRINCIPAL REAL ESTATE, FOR FAILURE TO PRUDENTLY AND LOYALLY MANAGE THE PLANS AND THEIR ASSETS

57.    Plaintiff repeats and realleges each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

58.    Under Section 3(21) of ERISA, 29 U.S.C. § 1002(21), Principal and Principal's individual employees responsible for managing the assets invested in the Property Account were at all relevant times ERISA fiduciaries as to the Plans and with respect to the Plan assets invested in the Property Account.

59.    As alleged above, the scope of the fiduciary duties and responsibilities of Principal included managing the assets of the Property Account.

60.    The Defendants were obligated to discharge their duties with respect to the Property Account with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

61.    Yet, contrary to their duties and obligations under ERISA, the Defendants failed to loyally and prudently manage the assets of the Plans in the Property Account managed by Principal. Specifically, Defendants breached their duties to the participants, in violation of ERISA § 404(a), by, *inter alia*, (a) failing to invest the assets in the Property Account in a manner consistent with the objectives and philosophies described

in the materials Principal circulated about the Property Account, and (b) generally failing to invest and manage the assets of the Property Account in the manner of a reasonably prudent fiduciary acting under similar circumstances.

62. As a consequence of the Defendants' breaches of fiduciary duties alleged in this Count, the Plans and participants which allocated retirement savings to the Property Account have suffered and continue to suffer massive losses. Had Defendants discharged their fiduciary duties to prudently invest the Property Account's assets and maintained adequate liquidity in the Property Account, the losses suffered by the Plans and participants in the Withdrawal Queue would have been minimized or avoided. Therefore, as a direct and proximate result of the breaches of fiduciary duty alleged herein, Plaintiff and the other Class members have lost hundreds of millions of dollars of retirement savings.

63. Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a), 1132(a)(2) & (a)(3), the Defendants are liable to restore the losses to the Plans caused by their breaches of fiduciary duty alleged in this Count and to provide other equitable relief as appropriate.

## XII. REMEDY FOR BREACHES OF FIDUCIARY DUTIES

64. The Defendants breached their fiduciary duties in that they knew, or should have known, the facts as alleged above, and therefore knew, or should have known, that the Property Account failed to maintain adequate liquidity to meet the withdrawal requests of the participants during the Class Period.

65. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109. Section

409 requires "any person who is a fiduciary...who breaches any of the...duties imposed upon fiduciaries...to make good to such plan any losses to the plan." Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate."

66. With respect to calculation of the losses to the Property Account, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the Plans would not have made or maintained their investments in the challenged investment and, instead, prudent fiduciaries would have invested the Plans' assets prudently and appropriately, and in this instance, according to the stated objective of the Property Account. In this way, the remedy restores the Plans' lost value and puts the participants in the position they would have been in if the Plans had been properly administered.

67. ERISA § 502(a)(3) also authorizes the award of other appropriate equitable relief for violations of fiduciary duty. Such relief includes disgorgement of ill-gotten fees from imprudent fiduciary conduct, as well as equitable tracing, constructive trust, and restitution.

68. Plaintiff and the Class are therefore entitled to relief from the Defendants in the form of: (a) a monetary payment to the Plans that offered the Property Account to make good to the Plans the losses resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (b) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a), 502(a)(2) and (3), 29 U.S.C. §§ 1109(a), 1132(a)(2) and (3); (c) injunctive and other appropriate equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. 1132(a)(3), to the extent applicable for knowing participation by a non-fiduciary in a fiduciary breach; (d)

reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (e) taxable costs and interest on these amounts, as provided by law; and (f) such other legal or equitable relief as may be just and proper.

69.     Under ERISA, each Defendant is jointly and severally liable for the losses suffered in this case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.      A Declaration that the Defendants, and each of them, have breached their ERISA fiduciary duties to the Plaintiff and the Class;

B.      An Order compelling the Defendants to make good to the ERISA plans that offered the Property Account for which Principal served as the Investment Manager all losses to the ERISA plans resulting from Defendants' breaches of their fiduciary duties, including losses to the Plans resulting from imprudent investment of the assets in the Property Account, and to restore to the Plans all profits the Defendants made through use of the Plans' assets, and to restore to the Plans all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations;

C.      Imposition of a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plans as the result of breaches of fiduciary duty;

D.      An Order requiring Defendants to appoint one or more independent fiduciaries to participate in the management of the Property Account for ERISA plans;

E.    Actual damages in the amount of any losses the Plans suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses as required by ERISA;

F.    An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

G.    An Order awarding attorneys' fees pursuant to the common fund doctrine, 29 U.S.C. § 1132(g), and other applicable law;

H.    An Order for equitable restitution and other appropriate equitable and injunctive relief against the Defendants, including restitution, disgorgement of fees, and equitable tracing; and

I.    Granting such other and further relief as the Court may deem just and proper.

Dated: December 2, 2009

WOLF POPPER LLP

By:  _____
     Lester L. Levy (LL-9956)
     Emily Madoff (EM-8407)
     Andrew E. Lencyk (AL-4329)
     James Kelly-Kowlowitz (JK-9616)
     845 Third Avenue
     New York, NY 10022
     Tel: (212) 759-4600

*Counsel for Plaintiff*