# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | |
|---|---|
| IN RE PRINCIPAL U.S. PROPERTY ACCOUNT ERISA LITIGATION | Case No.  4:10-cv-00198-RP-TJS |
| | CLASS ACTION |
| This Document Relates To: | |
| All Actions. | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO PARTIALLY DISMISS PLAINTIFFS' AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF ERISA

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 1

II.    FACTUAL BACKGROUND .................................................................. 3

     A.     The Property Account. ......................................................... 3

     B.     Defendants' Mismanagement of the Property Account. ....................... 3

     C.     Factual Inaccuracies and Distortions in the MTD. ............................. 5

III.   ARGUMENT ...................................................................................... 8

     A.     Defendants Conflate Standing With the Requirements of Rule 23. ................... 8

           1.     Defendants Concede That Plaintiffs Have Established Constitutional and Statutory Standing With Respect to Their Plans. ......................................................... 9

           2.     The Eighth Circuit Supports the Right of a Plaintiff to Bring Claims on Behalf of a Plan in Which He Was Not a Participant. ....................................................... 10

           3.     Defendants Cannot Distinguish or Undo the Vast Weight of Authority Rejecting Their Conflation of Standing and the Requirements of Rule 23. ....................... 12

           4.     Defendants' Extreme Position Is Premised Largely on Inapposite Decisions. ......................................... 14

     B.     Defendants' Arguments as to Why a Class of Plans Would Not Be Appropriate Are Patently Unfounded. ............................... 17

           1.     A Class of Plans Would Not Expand Statutory Standing Under ERISA. ......................................... 17

           2.     A Class of Plans Would Not Expand the Substantive Rights Provided by ERISA Nor Violate the Rules Enabling Act. ..................... 18

           3.     A Class of Plans Would Not Usurp the Authority Reserved to the Department of Labor. .......................... 20

IV.   CONCLUSION .................................................................................. 20

# TABLE OF AUTHORITIES

## Cases

*Acosta v. Pac. Enter.*,
  950 F.2d 611 (9th Cir. 1991) ............................................................................. 9

*Alves v. Harvard Pilgrim Health Care Inc.*,
  204 F. Supp. 2d 198 (D. Mass. 2002) ............................................................... 9

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997).......................................................................................... 18

*Arreola v. Godinez*,
  546 F.3d 788 (7th Cir. 2008) ............................................................................. 8

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) .................................................................... passim

*Buus v. WAMU Pension Plan*,
  No. 07-0903, 2007 WL 4510311 (W.D. Wash. Dec. 18, 2007) ........................ 9

*Califano v. Yamasaki*,
  442 U.S. 682 (1979)..................................................................................... 17, 18

*Caranci v. Blue Cross & Blue Shield of R.I.*,
  No. 96-275L, 1999 WL 766974 (D.R.I. Aug 19, 1999) .................................... 9

*Central States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco
  Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007)............................................................................... 9

*Charters v. John Hancock Life Ins. Co.*,
  534 F. Supp. 2d 168 (D. Mass. 2007) ........................................................... 9, 15

*Cress v. Wilson*,
  No. 06-2717, 2007 WL 1686687 (S.D.N.Y. June 6, 2007) ............................... 9

*Dann v. Lincoln Nat'l. Corp.*,
  708 F. Supp. 2d 481 (E.D. Pa. 2010) ............................................................... 10

*Doe v. Guardian Life Ins. Co. of Am.*,
  145 F.R.D. 466 (N.D. Ill.1992)......................................................................... 9

*Fallick v. Nationwide Mut. Ins. Co.*,
  162 F.3d 410 (6th Cir. 1998) .................................................................... passim

*Forbush v. J.C. Penney Co., Inc.*,
    994 F.2d 1101 (5th Cir. 1993) ................................................................................ 8, 12, 13

*Gruber v. Hubbard Bert Karle Weber, Inc.*,
    675 F. Supp. 281 (W.D. Pa.1987) ....................................................................... 9

*Haddock v. Nationwide Fin. Servs., Inc.*,
    262 F.R.D. 97 (D. Conn. 2009) .......................................................................... 9, 16

*Harley v. Minn. Mining & Mfg. Co.*,
    284 F.3d 901 (8th Cir. 2002) .............................................................................. 11

*Hassine v. Jeffes*,
    846 F.2d 169  (3d Cir. 1988) .............................................................................. 8

*Hastings v. Wilson*,
    516 F.3d 1055 (8th Cir. 2008) ........................................................................... 12

*In re Delphi ERISA Litig.*,
    230 F.R.D. 496 (E.D. Mich. 2005) ..................................................................... 9

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
    MDL 1446, 2006 WL 1662596 (S.D. Tex. June 7, 2006) .................................... 9

*In re ING Groep N.V. ERISA Litig.*,
    No. 09-0400, 2010 WL 1704402 (N.D. Ga. Mar. 31, 2010) ................................ 15

*In re La.-Pac. Corp., ERISA Litig.*,
    No. 02-1023, 2003 WL 21087593 (D.Or. April 24, 2003) .................................... 9

*In re Merck & Co., Inc. Sec. Deriv. & ERISA Litig.*,
    No. 05-2369, 2006 WL 2050577 (D.N.J. July 11, 2006) ..................................... 9

*In re Reliant Energy ERISA Litig.*,
    336 F. Supp. 2d 646 (S.D. Tex. 2004) ................................................................ 15

*In re SLM Corp. ERISA Litig.*,
    No. 08-4334, 2010 WL 3910566 (S.D.N.Y. Sept. 24, 2010) ............................... 15

*In re Tyco Int'l., Ltd. MLD Litig.*,
    MDL 1335, 2004 WL 2903889 (D.N.H. Dec. 2, 2004) ......................................... 9

*Johnson v. Buckley*,
    356 F.3d 1067 (9th Cir. 2004) ............................................................................ 14

*LaRue v. DeWolff, Boberg & Assocs.*,
    552 U.S. 248 (2008) ........................................................................................... 10

*LoPresti v. Citigroup Inc.*,
  171 Fed. Appx. 900 (2d Cir. 2006) ..................................................................... 14

*Mass. Mutual Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985) ........................................................................................... 19

*McDaniel v. N. Am. Indem., N.V., No.*,
  02-0422, 2003 WL 260704 (S.D. Ind. Jan. 27, 2003) .......................................... 9

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) .......................................................................................... 19

*Miller v. Rite Aid Corp.*,
  334 F.3d 335 (3d Cir. 2003) ............................................................................... 14

*Modern Woodcrafts, Inc. v. Hawley*,
  534 F. Supp. 1000 (D. Conn. 1982) ..................................................................... 14

*Ortiz v. Fibreboard*,
  527 U.S. 815 (1999) ........................................................................................... 18

*Piner v. E.I. DuPont de Nemours & Co.*,
  238 F.3d 414 (Table), No. 00-1082, 2000 WL 1699837 (4th Cir. Nov. 14,
  2000) .................................................................................................................. 15

*Ruppert v. Principal Life Ins. Co.*,
  252 F.R.D. 488 (S.D. Iowa 2008) ....................................................................... 16

*Ruppert v. Principal Life Ins. Co.*,
  No. 06-903, 2007 WL 2025233 (S.D. Ill. July 9, 2007) ...................................... 16

*Sanofi-Synthelabo Inc. v. Eastman Kodak Co.*,
   No. 99 Civ., 4888 LAP, 2000 WL 1611068 (S.D.N.Y. Oct. 27, 2000) ............... 14

*Selby v. Principal Mut. Life Ins. Co.*,
  197 F.R.D. 48 (S.D.N.Y. 2000) ............................................................................ 2

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  130 S.Ct. 1431 (2010) .................................................................................. 17, 19

*Smith v. Hickey*,
  482 F. Supp. 644 (S.D.N.Y. 1979) ...................................................................... 15

*Sutton v. Med. Serv. Assoc. of Pa.*,
  No. 92-4787, 1993 WL 273429 (E.D. Pa. July 20, 1993) ........................ 13, 14, 19

*Ward v. Avaya, Inc.*,
  487 F. Supp. 2d 467 (D.N.J. 2007) ................................................................... 9, 10

*Wu v. MAMSI Life & Health Ins. Co.*,
    256 F.R.D. 158 (D. Md. 2008) ............................................................................................ 9

## **Statutes**

8 U.S.C. § 1252 .................................................................................................................. 18

15 U.S.C. § 77z-1 ............................................................................................................... 18

15 U.S.C. § 78u-4 ............................................................................................................... 18

15 U.S.C. § 2310 ................................................................................................................ 18

15 U.S.C. § 6614 ................................................................................................................ 18

29 U.S.C. § 1109 ................................................................................................................ 17

29 U.S.C. § 1132 ......................................................................................................... passim

## **Rules**

Fed. R. Civ. P. 1 ................................................................................................................. 17

Fed. R. Civ. P. 23 ........................................................................................................ passim

## **Constiututions**

U.S. Const. Art. III, § 2 ............................................................................................ 9, 12, 13

## I.   INTRODUCTION

Plaintiffs respectfully submit this memorandum of law in opposition to Defendants' Motion to Partially Dismiss the Amended Consolidated Complaint (the "Motion" or "MTD") in which Defendants make two main arguments: (1) Plaintiffs lack standing to bring claims on behalf of plans in ERISA plans in which the Named Plaintiffs were not participants; and (2) Principal Financial Group, Inc. ("PFG") was not a fiduciary.  As Plaintiffs have stipulated to voluntarily dismiss PFG without prejudice based on representations made by Defendants regarding PFG's role with respect to the Principal U.S. Property Separate Account (the "Property Account" or "Account"), Plaintiffs' brief will only address Defendants' standing argument.[1]

The crux of Defendants' standing argument is that ERISA does not provide a plaintiff statutory standing to bring claims on behalf of a class of plans which includes plans in which the plaintiff was not a participant or beneficiary.  Defendants' argument is fundamentally flawed. Defendants have conflated the requirements of standing with Plaintiffs' ability to bring an ERISA claim as a class action under Fed. R. Civ. P. 23.  As several circuit courts that have considered the question directly have held, once Plaintiffs have established constitutional and statutory standing with regard to their own Plans – neither of which is disputed here – the analysis of whether Plaintiffs may represent a class of plans shifts away from Article III and ERISA to whether Plaintiffs meet the requirements of Rule 23.  *See, e.g., Fallick v. Nationwide Mut. Ins. Co*., 162 F.3d 410, 423 (6th Cir. 1998).  Moreover, the Eighth Circuit has adopted this same approach to the relationship between ERISA and Rule 23 in a closely related context.  *See Braden v. Wal-Mart Stores, Inc*., 588 F.3d 585, 591 (8th Cir. 2009).  Numerous district court opinions have come to the same conclusion, including, notably, *Selby v. Principal Mut. Life Ins.*

---

[1] Plaintiffs reserve the right to reassert claims against PFG in the event discovery demonstrates that, contrary to Defendants' representations, PFG in fact functioned as a fiduciary with respect to the Property Account.

*Co.*, 197 F.R.D. 48, 58 n.14 (S.D.N.Y. 2000) ("When the named plaintiff in an ERISA class action challenges an insurer's practice that the insurer engages in with respect to all of its plans, the court will allow the plaintiff to represent persons in the insurer's other insurance plans.").

Based on the vast weight of well-reasoned authority, Principal cannot genuinely contend that ERISA does not allow Plaintiffs to seek to certify a class of plans subject to a course of common imprudent conduct by Principal.  Whereas Defendants throw together a hodge-podge of arguments as to why the weight of authority is misguided, none of their arguments has merit. Defendants' position is, in the end, an extreme one that would effectively make it impossible to efficiently or economically obtain redress for the type of conduct alleged in the case – a breach of fiduciary duty by a common fiduciary that manages an investment that hundreds of different Plans hold.  As Defendants would have it, participants in each Plan that invested in the Property Account must bring a separate claim in which they seek redress against the same Defendants, for the same breach, causing losses for the same reason.  Rule 23 is designed to prevent just this sort of duplicative litigation and waste of judicial resources.

Defendants will have ample opportunity to challenge certification in this case at the class certification stage, and will no doubt avail themselves of this opportunity.  Plaintiffs in turn will seek to demonstrate that certification is appropriate because Defendants' fiduciary status with respect to the Plans cannot be disputed, and the gravamen of Plaintiffs' allegations is a course of common conduct by the Defendants that impacted all of the Plans in this Class.  Whatever the outcome of this dispute, it is an issue for another day.  Plaintiffs, thus, respectfully submit that Defendants' motion to dismiss should be denied, and the question of whether the case can proceed as a class action addressed in due course at the class certification stage.

## II.    FACTUAL BACKGROUND

### A.    The Property Account.

The Property Account is an insurance company separate account managed by Principal Life and Principal Real Estate Investors.  Many ERISA 401(k) and defined contribution plan participants, including Plaintiffs, invested in the Property Account.  Principal offered the Property Account to retirement plans throughout the country as a "low risk" retirement savings option with a "strong focus on liquidity" that was open to daily withdrawals.  *See* Amended Consolidated Complaint ("*Compl*.") ¶¶ 35-46.

Defendants managed and made all investment decisions with regard to the Property Account. *Compl.* ¶¶ 25-30, 33-34, 92-96, 98-99. Consequently, Defendants served as ERISA fiduciaries and investment managers for each of the ERISA-governed retirement plans that invested in the Property Account.  *Id.*  No other fiduciary of any ERISA Plan that invested in the Property Account exercised any discretionary authority with regard to the management of the Account.  Every decision that the Principal Defendants made with regard to the investment of the Property Account's assets impacted every Plan that was invested in the Property Account at the time.  *Compl.* at ¶¶ 33-34, 111.  Each Plaintiff is a participant in an ERISA Plan that invested in the Property Account, and suffered losses as a result.  *Id.* at ¶¶ 10, 15-23, 118-119, 120-123.

### B.    Defendants' Mismanagement of the Property Account.

Principal breached its fiduciary duties under ERISA by, *inter alia*, managing the Property Account inconsistently with the Property Account's objectives to maintain adequate liquidity to provide for daily withdrawals and to be a lower risk investment option akin to other conservative fixed income funds.  *Id*. at ¶¶ 49-83.  As a result of Principal's mismanagement, the Property Account was exposed to excessive risk and failed to maintain sufficient liquidity to meet the withdrawal requests of participants who had invested in the Property Account.  *Id*. at ¶¶ 48, 76-

83.  Indeed, the account performed abysmally; in a league of its own relative to the performance of other low risk investments to which the account compared itself.  *Id*. at ¶ 86.

On September 26, 2008, Principal imposed a withdrawal freeze, closing the Property Account to withdrawals and instituting a withdrawal queue (the "Withdrawal Queue" or the "Queue"), which effectively locked up participants' retirement savings in the Account.  *Id*. at ¶ 76.  By preventing ERISA plans and plan participants from withdrawing their money from the Property Account, Principal forced these investors to sustain staggering losses as the assets in the Account declined sharply in value.  *Id*. at ¶¶ 83-88.  Since the freeze was imposed, the per share value of the Property Account has declined from $704.32 to $498.26 as of January 19, 2011 (the Account reached its lowest value on December 23, 2009, at $428.78 per share).  *Id.* at ¶ 84.  Moreover, it was not until November 2010, more than two years later, that Principal honored all of the withdrawal requests pending in the Queue.  MTD at n.2.  However, the damage has been done to the Property Account investors who were suddenly forcibly deprived of their ability to control their accounts and prevent losses, as their savings were decimated.  *Compl.* ¶ 88.

Principal made many fundamental errors in its management of the ERISA assets in the Property Account, including: adopting a liquidity strategy that provided for inadequate short term liquidity and contemplated that much of the Account's "liquidity" would be achieved through borrowings (*Compl*. at ¶ 52); failing to manage liquidity appropriately even within its stated strategy, allowing its liquidity to be at or below the low-ends of the ranges called for by its strategy (*Id*. at ¶ 52-53); relying upon continued net inflows of capital from investors, and disregarding the substantial deterioration in cash flow from investors that occurred after 2005 (*Id*. at ¶¶ 54-57); pursuing imprudent portfolio management strategies, including the continued acquisition of major properties at unreasonable prices long after a prudent fiduciary would have

begun to reduce exposure to risky real estate assets (*Id*. at ¶ 59); and ignoring numerous red flags that indicated the real estate markets in the United States were overvalued. *Id*. at ¶¶ 65-75.

These management failures resulted in the Property Account becoming a high risk investment without adequate liquidity to provide for daily withdrawals. *Id*. at ¶¶ 60-64. As a result of this imprudent management, Principal locked up the retirement savings of ERISA Plan participants and beneficiaries and forced them to simply watch their retirement savings deteriorate as the value of the Account eroded. *Id*. at ¶¶ 76-88. Moreover, these investors were deprived of the opportunity to invest their retirement savings in investment options that performed far better during the time Principal refused to honor withdrawal requests. *Id*. at ¶ 121.

## C.    Factual Inaccuracies and Distortions in the MTD.

Principal makes numerous factual arguments in its Motion that warrant comment. For instance, Principal misstates the "purpose" of the Property Account, claiming in the MTD that the purpose of the Account was simply "to invest in real estate." MTD at 2. In fact, the "objectives" of the Property Account included "maintain[ing] appropriate liquidity so that clients can make daily contributions or withdrawals." *Compl*. at ¶ 37. Moreover, the "philosophy" of the Account was to accomplish "low to moderate fund-level risk" for the Account by "operating with a strong liquidity focus." *Id*. at ¶ 36. Additionally, the annual reports explained that the Account "is available to qualified retirement plans and is open to contributions and withdrawals daily." *Id*. at ¶ 35. Other Principal documents also indicate that the Account was designed to be low risk and focused on liquidity. *Id*. at ¶¶ 38-46. Principal's attempts to retroactively change these important characteristics of the Account at this late date should be given no weight.[2]

Principal also claims that it "consistently" disclosed a liquidity risk associated with the

---

[2] Since putting the Queue in place, Principal has changed the Account's stated "philosophy," "background," and "objectives" such that they no longer make any reference to liquidity. *See* Exh. 21 to *Compl*. at 3.

Property Account.  MTD at 4.  Even if this were accurate it would be irrelevant, as Principal was obligated to manage the Account according to its philosophy, objectives, and background—which required that the Account maintain adequate liquidity to provide for daily withdrawals. Moreover, the documents Principal cites in support of its "disclosure" are unconvincing.  MTD at 4 (citing Exhs. 19 & 9 to *Compl.*).  For instance, Exhibit 19 was published only after the Queue was put in place, and was apparently meant to answer questions about why participants and beneficiaries could not access their retirement funds or move them to safer investment alternatives.  Exhibit 9, on the other hand, was not publicly distributed and was produced in discovery only pursuant to a confidentiality agreement.  To suggest that such a document somehow disclosed to class members a liquidity risk contrary to the Account's philosophy, objectives, and background is absurd.

Moreover, even if Principal reserved the legal right to impose the Withdrawal Queue, the imposition of the Queue is not the only, or even the primary, subject of Plaintiffs' allegations: the Amended Complaint focuses on Principal's mismanagement of the Account, mismanagement which led Principal to impose the Withdrawal Queue.  The Withdrawal Queue is a symptom of Principal's mismanagement, not the source of the mismanagement itself.[3]

Principal also argues that the real estate crisis in 2008 "generated unprecedented numbers of requests by the Property Account's investors to redeem all or part of their investments."  MTD at 1.  This is highly misleading to say the least.  In fact, participant contributions had been declining in the Property Account for years before 2008.  *Compl.* ¶ 56 (net contributions declined each year from 2004 to 2008 from a high of $774,199,534 in 2004 to a net negative contribution of -$730,092,994 in 2008).  Moreover, Defendants were well aware of the problems in the real

---

[3] Nevertheless, the manner in which the Withdrawal Queue was put in place—with literally no warning, despite weeks of consideration by Principal, was in itself also imprudent.

estate market as early as October, 2007, almost a year before the imposition of the Withdrawal Queue. *Id*. at ¶ 71. However, unbeknownst to investors in the Property Account, Principal was relying on new contributions as a primary source of liquidity to fund withdrawals. *Id*. at ¶¶ 51-54. Given this confluence of factors, Principal should have seen trouble on the horizon and taken steps to shore up the Property Account's liquidity position, but it did not. *Id*. at ¶¶ 65-75-54. Furthermore, Plaintiffs do not allege that Principal failed to divine the global financial crisis, but, rather that Principal failed to maintain adequate liquidity (per the Account's objectives and philosophy) in spite of the numerous warnings outlined here and in Plaintiffs' Complaint. *Id*.

Principal complains further that selling assets under fire sale conditions would have been detrimental to Plaintiffs and absent class members. MTD at 2. But this simply underscores that it was incumbent upon Principal to maintain adequate liquidity, as the Account's philosophy, objectives, and background indicated, so that no such firesale would be required in the event of a market downturn.

Defendants also assert that "the Property Account has earned a [time-weighted] compounded annual net return of 5.57% since [1982 and] that cash investments offering the kind of liquidity demanded by Plaintiffs, such as 90-day Treasury Bills, would have generated far lower returns over the same period." MTD at n.3. Even a cursory review of the Treasury Bills information cited by Defendants reveals that Treasury Bills actually earned 5.1% during the same time period. *Id*. This is hardly "far lower returns," especially given the massively lower risk associated with investing in Treasury Bills. Moreover, during the period from 2004 to 2009 (the only period for which Defendants have provided data in discovery), the Property Account returned a loss of 0.53%, compared to 3.46% gain returned by the Account's stated benchmark. Exh. 21 to *Compl*. at 5.

Principal additionally faults the Complaint as "devoid of any factual allegations regarding the 'losses' that Plaintiffs seek to recover on behalf of [the absent class members'] plans." MTD at 7. This is untrue. Plaintiffs' allegations clearly refer to both the named Plaintiffs and absent class members. *See, e.g. Compl*. at ¶¶ 118-22. Defendants have not sought to dismiss Plaintiffs' claims *in toto*, and, thus, their efforts to distort and downplay the allegations of the Complaint should be read for what they are – an attempt to disparage claims that Defendants know to be well pled and entitled to development in discovery.

## III.   ARGUMENT

### A.   Defendants Conflate Standing With the Requirements of Rule 23.

Defendants' contention that ERISA does not provide Plaintiffs standing to sue on behalf of a class of similarly situated plans in which they are not participants collides with abundant contrary authority. Defendants have muddled the requirements of statutory and constitutional standing with the requirements of proceeding as a class action under Rule 23. The question of standing centers on whether the plaintiff has the right to bring his claim against this defendant. If the plaintiff has standing to bring his own claims, plaintiff's ability to represent absent class members is governed Rule 23. In *Fallick*, the Sixth Circuit explained "[o]nce his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23…." 162 F.3d at 423 (citations omitted).[4]

Abundant authority – both circuit and district court – endorses this approach. This includes the Fifth Circuit, *Forbush v. J.C. Penney Co., Inc*., 994 F.2d 1101, 1106 (5th Cir. 1993),

---

[4] *See also Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008) ("[T]he inherent problem with the idea of 'standing to bring a class action' is that it 'conflates the standing inquiry with the inquiry under Rule 23 about the suitability of a plaintiff to serve as a class representative.'"); *Hassine v. Jeffes*, 846 F.2d 169, 179  (3d Cir. 1988) ("[T]he standing analysis is distinct from the analysis of the adequacy of representation by a putative named plaintiff.").

the Second Circuit, *Central States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007), numerous district court cases,[5] and as discussed in detail below, in a closely related context, the Eighth Circuit, *Braden*, 588 F.3d at 591-93 (citing *Fallick* with approval and concluding that "a plaintiff may seek relief under § 1132(a)(2) that sweeps beyond his own injury.").[6]

Thus, the correct analysis to determine whether Plaintiffs are entitled to represent a class of plans subjected to the same common course of conduct is (1) whether the Plaintiffs have standing to bring their claims against the Defendants with regard to their own Plans, (2) whether ERISA - the statute authorizing this action - limits the availability of Rule 23, and (3) whether the requirements of Rule 23 are satisfied by Plaintiffs.  Because Plaintiffs satisfy the first two of these factors, and analysis of the third factor is premature, Defendants' Motion should be denied.

1.     **Defendants Concede That Plaintiffs Have Established Constitutional and Statutory Standing With Respect to Their Plans.**

In order to proceed with their claims, Plaintiffs "must have both Article III standing and a

---

[5] *Charters v. John Hancock Life Ins. Co.*, 534 F. Supp. 2d 168, 172 (D. Mass. 2007) (under Rule 23, plaintiffs need not "have standing with respect to every plan of a putative class member"); *Haddock v. Nationwide Fin. Servs.*, 262 F.R.D. 97, 112 (D. Conn. 2009) ("so long as the plaintiffs have individual standing to pursue their claims against Nationwide, they are at least eligible to seek class certification of those claims."); *Alves v. Harvard Pilgrim Health Care Inc.*, 204 F. Supp. 2d 198, 205 (D. Mass. 2002) ("When a single defendant offers a range of ERISA plans, an individual in one plan can represent a class of plaintiffs-including some belonging to other plans-as long as 'the gravamen of the plaintiff's challenge is to the general practices of the defendant which affect all of the plans.'"); *Wu v. MAMSI Life & Health Ins. Co.*; 256 F.R.D. 158, 167 (D. Md. 2008) (same); *Cress v. Wilson*, No. 06-2717, 2007 WL 1686687, *10 (S.D.N.Y. June 6, 2007) (same); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, MDL 1446, 2006 WL 1662596, *8 (S.D. Tex. June 7, 2006) (same); *In re Merck & Co., Inc. Sec. Deriv. & ERISA Litig.*, No. 05-2369, 2006 WL 2050577, *8 (D.N.J. July 11, 2006); *In re Delphi ERISA Litig.*, 230 F.R.D. 496 (E.D. Mich. 2005); *In re Tyco Int'l., Ltd. MLD Litig.*, MDL 1335, 2004 WL 2903889, *2 n.1 (D.N.H. Dec. 2, 2004); *In re La.-Pac. Corp., ERISA Litig.*, No. 02-1023, 2003 WL 21087593, *3-5 (D.Or. April 24, 2003); *Ward v. Avaya*, 487 F. Supp. 2d 467, 481-82 (D.N.J. 2007); *McDaniel v. N. Am. Indem., N.V.*, No. 02-0422, 2003 WL 260704 (S.D. Ind. Jan. 27, 2003); *Caranci v. Blue Cross & Blue Shield of R.I.*, No. 96-275L, 1999 WL 766974, *13 (D.R.I. Aug 19, 1999) (NO. C.A. 96-275L); *Buus v. WAMU Pension Plan*, No. 07-0903, 2007 WL 4510311, *5 (W.D. Wash. Dec. 18, 2007); *Doe v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466 (N.D. Ill.1992); *Gruber v. Hubbard Bert Karle Weber, Inc.*, 675 F. Supp. 281 (W.D. Pa.1987).

[6] Defendants' reliance on Ninth Circuit authority, *Acosta v. Pac. Enter.*, 950 F.2d 611, 617 (9th Cir. 1991), is misplaced, as the question of plaintiff's standing was not examined in the context of a class action.  *See Fallick*, 162 F.3d at 422 n.9 ("Acosta brought suit only in his individual capacity; he did not seek to represent a class of plaintiffs similarly situated with respect to the two pension plans in question.").

cause of action under ERISA." *Braden*, 588 F.3d at 591.  Significantly, Defendants concede that each of the Plaintiffs has both constitutional and statutory standing to bring claims on behalf of his and her own Plans.  *See* MTD at 3 ("Plaintiffs can attempt to state claims to recover 'losses' to plans in which they participate…."); MTD at 10 (MTD applies only to participants in plans "other than the nine separate plans identified in the Amended Complaint.").[7]  Consistent with these concessions, Plaintiffs have standing to pursue the relief they seek in this case on behalf of their own Plans and, thus, are entitled to attempt to seek relief on behalf of the class of Plans subject to the same course of common conduct by Defendants.

Defendants' refrain throughout their motion that Plaintiffs cannot represent a class of plans because they lack "standing" to bring claims directly on behalf of other plans is the precise conflation of the requirements of standing and Rule 23 that numerous courts have rejected.  *See, e.g., Dann v. Lincoln Nat'l. Corp.*, 708 F. Supp. 2d 481, 487 (E.D. Pa. 2010) (plaintiff, a participant in one ERISA plan, "cannot commence an action directly on behalf of [two plans in which he was not a participant].  He may, however, represent those plans as part of a class action."); *Ward v. Avaya, Inc.*, 487 F. Supp. 2d 467, 481-482 (D.N.J. 2007) (same).

## 2. The Eighth Circuit Supports the Right of a Plaintiff to Bring Claims on Behalf of a Plan in Which He Was Not a Participant.

The Eighth Circuit's analysis of standing in the context of an ERISA class action follows *Fallick*.  In *Braden*, the question before the court was whether a participant had standing to brings claims under ERISA § 1132(a)(2) based on breaches of fiduciary duty which were committed prior to the date the plaintiff became a participant.  Relying principally on *Fallick*, the

---

[7] Defendants fault Plaintiffs for not "indicat[ing] whether they are current or former employees of the companies that sponsor these plans and they do not attempt to sue the fiduciaries of their plans…."  MTD at 7.  As Defendants are fully aware, it is irrelevant under ERISA § 1132(a) whether a plaintiff is a current employee of an employer—instead, the relevant question is whether they are a participant, beneficiary, or fiduciary.  *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 256 n. 6 (2008).

court answered in the affirmative and explained:  "'[T]he standing-related provisions of ERISA were not intended to limit a claimant's right to proceed under Rule 23 on behalf of all individuals affected by the [fiduciary's] challenged conduct, regardless of the representative's lack of participation in all the ERISA-governed plans involved.'  Thus, a plaintiff may seek relief under § 1132(a)(2) that sweeps beyond his own injury."  *Braden*, 588 F.3d at 593 (quoting *Fallick*, 162 F.3d at 423).

Defendants argue that *Braden* is inapplicable because the lawsuit concerned only the plaintiff's own plan, not other plans in which the plaintiff did not participate.  MTD at 16.  Yet, the central premise of *Braden*'s standing discussion, and the basis for its citation to *Fallick*, was that once constitutional and statutory standing are established, an ERISA participant "*may seek relief under § 1132(a)(2) that sweeps beyond his own injury.*"  *Braden*, 588 F.3d at 593 (emphasis added).  That is precisely what Plaintiffs seek to do here.

Defendants contend that the "restrictive approach to standing" purportedly espoused in *Harley v. Minn. Mining & Mfg. Co.*, 284 F.3d 901 (8th Cir. 2002), compels rejection of Plaintiffs' effort to represent persons who participated in other plans subject to the same course of common conduct.  MTD at 16-17.  *Braden* rejects this reading of *Harley*: "Our decision in [*Harley*] is not to the contrary….We concluded that 'participants or beneficiaries who have suffered *no injury in fact*' do not have standing to sue on behalf of the plan under § 1132(a)(2). This is not such a case as pled by Braden."  588 F.3d at 593 (emphasis added).  *Harley* is inapplicable here as well because like Braden, Plaintiffs suffered injuries in fact.  Indeed, Defendants concede that the Plaintiffs have suffered injury sufficient to convey standing to bring claims on behalf of their own Plans.[8]  Moreover, the Complaint alleges that the Plaintiffs (as well

---

[8] The *Harley* plaintiffs were participants in a defined benefit plan, not a defined contributed plan.  In such a plan, all of the investment risk is borne by the employer.  Because the plan in *Harley* retained a surplus, plaintiffs suffered

as the absent class members) suffered losses as a result of Defendants' common course of imprudent conduct. *Compl.* at ¶¶ 33-34, 111. This allegation must be accepted as true at this stage of the litigation. *Braden*, 588 F.3d at 592.

Defendants also misconstrue the holding in *Hastings v. Wilson*, 516 F.3d 1055, 1060-61 (8th Cir. 2008). In *Hastings*, the Eighth Circuit noted that it had not adopted the rule that "an individual in one ERISA benefit plan can represent a class of participants in numerous [ERISA benefit] plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans." *Id.* at 1061 (citing *Fallick*, 162 F.3d at 422; *Forbush*, 994 F.2d at 1105-06). However, contrary to Defendants' argument (MTD at 12), the court did *not* reject this rule or affirm dismissal based on the plaintiffs' lack of standing to sue on behalf of other plans subject to the same common course of conduct as their own. On the contrary, the court declined to reach the issue, because the court lacked subject matter jurisdiction over the plans in which the plaintiffs participated as a result of a mandatory arbitration provision. *Hastings*, 516 F.3d at 1061. Hence, *Hastings* is both factually inapposite, and legally inconclusive.[9]

### 3.   Defendants Cannot Distinguish or Undo the Vast Weight of Authority Rejecting Their Conflation of Standing and the Requirements of Rule 23.

Undeterred by the weight of authority, Defendants attempt to persuade the Court that ERISA does not allow certification of a class of plans subject to a common course of conduct by Defendants. MTD at 9-17. Defendants' attempt to distinguish *Fallick* on the basis that the court

---

no harm. Here, all of the participants in the class, including plaintiffs, invested in the Property Account through defined contribution plans and suffered losses as a result.

[9] In addition, Defendants fail to acknowledge that *Braden* was decided 19 months after *Hastings*, and whereas *Hastings* noted and reserved the question of whether participants can bring claims on behalf of other plans subject to the same common course of conduct as their own, *Braden* reported that "Courts have recognized that a plaintiff with Article III standing may proceed under § 1132(a)(2) on behalf of the plan or other participants," cited *Fallick* in support of this proposition, and, moreover, relied on *Fallick* in resolving the question of whether a plaintiff can represent persons in a plan in which he is not yet a participant. *Braden*, 588 F.3d at 593.

examined only whether a plaintiff had constitutional standing ignores that the key issue in *Fallick* was the same as the issue raised here: whether a plaintiff lacks individual standing to assert class claims on behalf of other plans in which he or she did not participate. The *Fallick* court held that the district court's analysis had been "fundamentally flawed" in that it confused "the issue of a plaintiff's standing under Article III vis-à-vis a defendant with the relationship between a potential class representative and absent class members, which is governed by Rule 23…." *Fallick*, 162 F.3d at 422. Defendants' effort to urge this confusion with regard to statutory as opposed to constitutional standing is a distinction without a difference given the court's extensive discussion of the interplay between standing, both constitutional and statutory, and Rule 23. *Id.* at 421-23.

Defendants also challenge two cases on which the *Fallick* court relies: *Forbush*, and *Sutton v. Med. Serv. Assoc. of Pa.*, No. 92-4787, 1993 WL 273429 (E.D. Pa. July 20, 1993). Defendants again contend that these authorities do not address the question of ERISA statutory standing raised here; however, Defendants misread the holdings of these cases. MTD at 14. As explained by the *Fallick* court, the Fifth Circuit in *Forbush* never addressed the question of plaintiff's standing, either constitutional or statutory, because it was generally accepted that the plaintiff had standing to bring a claim under ERISA on an individual basis. *Fallick*, at 423 (citing *Forbush*, 994 F.2d at 1106). As such, the Fifth Circuit "properly proceeded to an analysis of whether [the plaintiff's] relationship with the proposed class satisfied Rule 23." *Id.* As Defendants have conceded that Plaintiffs have statutory and constitutional standing to bring their claims on an individual basis, *Forbush*, like *Fallick*, supports the conclusion that Plaintiffs here have standing to bring claims on behalf of absent class members, and whether the proposed class satisfies Rule 23 is a question to be answered once Plaintiffs have moved for class certification.

13

Likewise, Defendants' assessment that *Sutton* does not address "ERISA's express limitations … nor … the interplay between this aspect of statutory standing and Rule 23" and is thus inapplicable, is equally flawed.  MTD at 14-15.  In fact, the *Sutton* court rejected the same statutory argument that Defendants make here, on precisely the same grounds.   There, participants in an ERISA plan sued a fiduciary for multiple plans whose breach impacted multiple plans in the same way (as Plaintiffs have alleged here).  The court granted certification, and the defendant moved for reconsideration on the grounds that ERISA did not permit participants in one plan to represent participants in other plans.  The court denied the motion and left the certification in place, explaining that the certification was "not an expansion of the remedies available to plaintiff…or to any other class member" since "[i]f the class action is successful, each individual class member [would] be entitled to recover no more than that to which he or she would be individually entitled to recover if he or she had brought a separate action under Section 1132."  *Sutton*, 1993 WL 273429 at *4.  Thus, *Sutton* court *does* address ERISA's "express limitations" but finds that they do not preclude certification of a class of plans.

### 4.    Defendants' Extreme Position Is Premised Largely on Inapposite Decisions.

Most of the decisions Defendants rely on have a common denominator that renders them easily distinguishable – a plaintiff that lacked standing to bring claims on behalf of *any* plan.  *See Modern Woodcrafts, Inc. v. Hawley*, 534 F. Supp. 1000, 1013-14 (D. Conn. 1982) (plaintiffs lacked standing to bring ERISA claims because none participated in the plan at issue in the case) (MTD at 11); *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (same) (MTD at n.8); *Miller v. Rite Aid Corp.*, 334 F.3d 335, 345 (3d Cir. 2003) (same) (MTD at n.8); *Sanofi-Synthelabo Inc. v. Eastman Kodak Co.*, No. 99 Civ. 4888 LAP, 2000 WL 1611068, at **3-4 (S.D.N.Y. Oct. 27, 2000) (plaintiff fiduciary lacked standing) (MTD at 11); *LoPresti v. Citigroup Inc.*, 171 Fed. Appx. 900, 901 (2d Cir. 2006) (plaintiffs were not fiduciaries, participants or

beneficiaries of any of the plans in dispute) (MTD at 11). These cases say nothing about the ability of a participant to bring a claim on behalf of a class of plans where he has both constitutional and statutory standing with regard to his own plan.[10]

Defendants also cite to cases which are not on point and do not warrant extended discussion. *See Piner v. E.I. DuPont de Nemours & Co.*, 238 F.3d 414 (Table), No. 00-1082, 2000 WL 1699837, *4 (4th Cir. Nov. 14, 2000) (plaintiffs did not bring claim as class action on behalf of participants in both plans at issue because plaintiffs were complaining that the plan in which they did not participate was unfairly favored over their own plan) (MTD at n. 8); *Smith v. Hickey*, 482 F. Supp. 644, 650 (S.D.N.Y. 1979) (finding that ERISA does not provide the court with jurisdiction where plaintiffs were not seeking any redress under ERISA) (MTD at 11-12).

Of all the decisions cited by Defendants, only two involved plaintiffs who had standing to bring claims in one ERISA plan, but were found to lack standing to bring a class action on behalf of participants in other plans. *In re SLM Corp. ERISA Litig.*, No. 08-4334, 2010 WL 3910566, at *12 (S.D.N.Y. Sept. 24, 2010), *appeal docketed*, No. 10-4061 (2d Cir. Oct. 12, 2010); *In re ING Groep N.V. ERISA Litig.*, No. 09-0400, 2010 WL 1704402, at **4-5 (N.D. Ga. Mar. 31, 2010), *appeal docketed* (No. 10-11948 (11th Cir. Apr. 29, 2010). Neither decision is persuasive. Although not noted by Defendants, both of these decisions are currently on appeal. Furthermore, neither decision discusses the relationship between standing and Rule 23, or the many decisions directly on point that consider this question. Indeed, the district court in *SLM* overlooks *Central States'* controlling law in which the Second Circuit upheld certification of a class of plans. *See Charters v. John Hancock Life Ins. Co.*, 534 F. Supp. 2d 168, 172 (D. Mass. 2007) (explaining

---

[10] *In re Reliant Energy ERISA Litig.*, 336 F. Supp. 2d 646, 653-54 (S.D. Tex. 2004) (MTD at 12) is unhelpful to Defendants because the plaintiff sought to pursue claims against fiduciaries that were not common to his own plan. The court distinguished *Fallick* and *Forbush* on this basis. However, this distinction does not apply here - Principal has conceded that it was a fiduciary for the Property Account. MTD at 7-8.

that *Central States* reaches the same result as *Fallick* and *Forbush*). Plaintiffs respectfully submit that the two district court decisions cited by Defendants represent a minority and unpersuasive view of the standing necessary to seek relief under ERISA where the gravamen of Plaintiffs' challenge is a common course of conduct by Defendant-fiduciaries.

Defendants also rely heavily on *Ruppert v. Principal Life Ins. Co.*, No. 06-903, 2007 WL 2025233 (S.D. Ill. July 9, 2007); however, they overlook that the issue before the court there was whether to transfer the case to Iowa. The court concluded that it need not consider plans other than the named plaintiff's plan when considering where the action should be litigated. Defendants are not the first to misapply *Ruppert. See Haddock v. Nationwide Fin. Servs., Inc.*, 262 F.R.D. 97, 111-12 (D. Conn. 2009) ("To the extent that *Ruppert's* language about standing is not dicta, there is nothing to suggest that the Court's reasoning on the issue of standing was directed to the issue whether an ERISA trustee (or plan participant, beneficiary, or other fiduciary) has the authority or ability to seek to certify a class.").

Moreover, following transfer, Judge Jarvey "assume[ed] without deciding that Ruppert has standing to represent the class he proposes…." *Ruppert v. Principal Life Ins. Co.*, 252 F.R.D. 488, 499 (S.D. Iowa 2008). While the court found that plaintiff fell short on Rule 23 – for reasons inapplicable here – the fact remains that, within the *Ruppert* case itself, the transfer order did not resolve the standing question, and indeed was not even followed by Judge Jarvis. Instead, the court evaluated whether a class of plans could proceed based on Rule 23 – as *Fallick, Forbush* and the multitude of related cases discussed above suggest is the proper approach in a case involving a class of plans.

**B.     Defendants' Arguments as to Why a Class of Plans Would Not Be Appropriate Are Patently Unfounded.**

**1.     A Class of Plans Would Not Expand Statutory Standing Under ERISA.**

Certification of the proposed class here would not amount to an "expansion of statutory standing" as Defendants repeatedly argue (*see, e.g*., MTD at 13).   Section 1132(a) provides participants with "statutory standing" to bring claims to obtain the relief afforded by Section 1109.   In turn, section 1109 provides that: "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach."   Consistent with these provisions, Plaintiffs seek to hold Defendants liable for the losses to the Plans caused by Defendants' fiduciary breaches.[11]

There is no requirement for ERISA to expressly state that a participant may proceed on behalf of a class of participants in his or other plans in order to invoke the Rule 23 procedural mechanism.   Supreme Court authority makes this abundantly and unavoidably clear.   "In the absence of a direct expression by Congress of its intent to depart from the usual course of trying "all suits of a civil nature" under the Rules established for that purpose, class relief is appropriate in civil actions brought in federal court."   *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979); *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 130 S.Ct. 1431, 1438 (2010) ("Rule 23 *automatically* applies 'in all civil actions and proceedings in the United States district courts.'") (emphasis in original) (citing Fed. R. Civ. P. 1).   ERISA does not include any "direct expression" making Rule 23 unavailable.   Indeed, the Supreme Court has cited section 1132(a)

---

[11]  Interestingly, while Defendants contend the language of ERISA only authorizes a plaintiff to seek relief from his own plan, Section 1132(a)(2) does not contain this express limitation.   Rather, the provision states that a participant may bring a civil action to obtain the relief afforded by Section 1109, and nowhere states that this relief may only be obtained for his own plan.   Section 1109, moreover, nowhere indicates that a participant cannot compel a fiduciary to make good the losses to all plans harmed by his breach.

as an example of a federal jurisdictional provision under which, even though it speaks "in terms of individual plaintiffs," "class relief has never been thought to be unavailable." *Califano*, 442 U.S. at 700.[12]   Thus, Defendants' argument that ERISA does not allow for a class of plans because the statute does not expressly address whether a class of plans is permissible, collides squarely with Supreme Court authority.   Rule 23 is "automatically" available unless Congress says otherwise – and Congress has done no such thing within ERISA.

Second, Defendants' assertion that bringing a claim on behalf of a class of plans would not fall within the "carefully enumerate[d] parties entitled to seek relief" under Section 1132(a), is unavailing.   MTD at n.9.   Plaintiffs are among the enumerated parties entitled to seek relief. They are plan participants who seek relief for losses caused by fiduciary breach.   Moreover, the class of persons they seek to represent also are among the enumerated parties entitled to seek relief.   As such, no one who would not already have standing to bring claims directly would obtain standing if this case were certified.   Defendants fail to provide any credible explanation for how certification of a class of persons  – who are each entitled to seek redress under ERISA – improperly expands ERISA's statutory standing requirements.

### 2.      A Class of Plans Would Not Expand the Substantive Rights Provided by ERISA Nor Violate the Rules Enabling Act.

Defendants suggest that a class of plans would impermissibly expand the substantive rights provided by ERISA, which they contend would violate the Rules Enabling Act.[13]   MTD at

---

[12] This is all the more obvious when Section 1132(a) is compared to statutes that do limit the applicability of Rule 23. *See, e.g.,* 8 U.S.C. § 1252(e)(1)(B); 15 U.S.C. § 6614; 15 U.S.C. § 77z-1; 15 U.S.C. § 78u-4; 15 U.S.C. § 2310.

[13] Defendants cite *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) and *Ortiz v. Fibreboard*, 527 U.S. 815 (1999), but neither of these cases addresses the question here – whether a particular statute limits the applicability of Rule 23. Instead, *Amchem* and *Fibreboard* address whether settlement classes provide adequate relief for the absent class members that Rule 23 was designed to protect. *Compare Amchem*, 521 U.S. at 619 (granting certiorari "to decide the role settlement may play" in class certification); *Fibreboard*, 527 U.S. at 821 (same) *with Califano*, 442 U.S. at 700 (Rule 23 presumptively available in actions under ERISA § 1132 even though the statute is silent on the issue).

15. Defendants miss the mark for two reasons. First, no one disputes that ERISA is a "comprehensive and reticulated statute" that does not allow substantive relief that is not expressly authorized in the statute. *See, e.g., Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) (rejecting extracontractual damages for delayed treatment because it was not authorized by ERISA); *Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993) (finding that monetary damages are not available under Section 1132(a)(3) which only provides for equitable relief). However, Plaintiffs are not seeking any relief that is not authorized by the statute. On the contrary, the Complaint seeks recovery of losses caused by the fiduciary breaches at issue – precisely what the statute provides. If the class is certified, Plaintiffs will be able to obtain this relief for all of the participants in their Plans and the other Plans subject to Defendants' common course of conduct. This also does not expand any statutory rights because "[i]f the class action is successful, each individual class member [would] be entitled to recover no more than that to which he or she would be individually entitled to recover if he or she had brought a separate action under Section 1132." *Sutton*,` 1993 WL 273429, at *4.

Second, the fact that class certification will increase the number of Plans that will obtain relief if this case is successful does not transform the Rule 23 *procedural* device into a Rules Enabling Act-violating *substantive* device. Again, the Supreme Court has spoken directly to this issue: "A class action [under Rule 23], no less than traditional joinder (of which it is a species), merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits. And like traditional joinder, it leaves the parties' legal rights and duties intact and the rules of decision unchanged." *Shady Grove*, 130 S.Ct. at 1443. Thus, Defendants' Rules Enabling Act challenge falls short. Certification of a class of plans would allow other participants harmed by the same fiduciary breach to obtain redress to which they are entitled

under the statute, but would not change any substantive rights provided by ERISA.

> **3.      A Class of Plans Would Not Usurp the Authority Reserved to the Department of Labor.**

Defendants complain that Plaintiffs are attempting to expand ERISA statutory standing by seeking relief for other plans when that right is reserved exclusively to the Secretary of Labor. MTD at 16.   Tellingly, Defendants do not cite any authority that supports this position, presumably because the plain language of ERISA § 1132(a) provides, in all relevant respects, that the Secretary of Labor, participants, and beneficiaries have virtually identical rights to pursue claims against breaching fiduciaries under Section 1132(a)(1)-(5).   Thus, Defendants' argument that a class action seeking relief for multiple plans "invade[s] the sphere of public enforcement delegated to the Secretary" is unsupported by the statute.[14]   MTD at 16.

## IV.   CONCLUSION

For the reasons explained above, Defendants' Motion to Dismiss is fatally flawed and should be denied.   After appropriate discovery and briefing, the Court will be in a position to determine whether Rule 23 is satisfied by Plaintiffs where the gravamen of Plaintiffs' challenge is to the general practices of the Defendants which affect all of the Plans in the proposed Class.

Respectfully submitted,

Dated:        January 27, 2011                    KELLER ROHRBACK, L.L.P.

By: /s/ Derek W. Loeser
Derek W. Loeser
Lynn L. Sarko
Cari Laufenberg

---

[14] Defendants' citation to ERISA's legislative history (MTD at 16) is somewhat mystifying, as the cited provisions of the conference report do not indicate that the Secretary possesses authority under ERISA § 502(a)(1)-(5) not also allocated to participants and beneficiaries.  In fact, the legislative history uses virtually identical terminology to describe the remedial powers assigned to participants (who may "bring suit in Federal court … to obtain redress of fiduciary violations") and the Secretary (who is "empowered to bring civil actions to redress … violations on the part of fiduciaries").  At any rate, fishing in the legislative history for evidence regarding whether Congress expressly contemplated application of Rule 23 to ERISA misses the point.  Under controlling Supreme Court authority, Rule 23 applies unless Congress expressly states otherwise.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
dloeser@kellerrohrback.com
lsarko@kellerrohrback.com
claufenberg@kellerrohrback.com

Gary A. Gotto
James A. Bloom
KELLER ROHRBACK P.L.C.
3101 N. Central Ave., Suite 1400
Phoenix, Arizona  85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822
ggotto@krplc.com
jbloom@krplc.com

***Interim Lead Counsel for Plaintiffs***

David Harris Goldman
Kodi Ann Brotherson
Michael J. Carroll
BABICH GOLDMAN CASHATT &
RENZO PC
100 Court Ave, Ste 403
Des Moines, IA 50309-2296
Telephone: (515) 244-4300
Facsimile:  (515) 244-2650
dgoldman@babichlaw.com
kbrotherson@babichlaw.com
mcarroll@babichlaw.com
***Interim Local Counsel for Lead Plaintiffs***

## CERTFICATE OF SERVICE

I, Derek W. Loeser, hereby certify that on January 27, 2011, a copy of PLAINTIFFS'
OPPOSITION TO DEFENDANTS' MOTION TO PARTIALLY DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF ERISA was filed
electronically, and is being served electronically this date upon all involved parties participating
in the Court's electronic filing system or first-class mail, postage pre-paid.

Dated: January 27, 2011

                                     By : /s/ Derek W. Loeser
                                          Derek W. Loeser
                                          dloeser@kellerrohrback.com
                                          KELLER ROHRBACK L.L.P.
                                          1201Third Avenue, Suite 3200
                                          Seattle, WA 98101
                                          Telephone: (206) 623-1900
                                          Facsimile: (206) 623-3384