UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| IN RE PRINCIPAL U.S. PROPERTY ACCOUNT ERISA LITIGATION | |
| This Document Relates To:<br><br>All Actions. | MASTER FILE NO.: 4:10-cv-00198-RP-TJS |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION
TO PARTIALLY DISMISS PLAINTIFFS' AMENDED
CONSOLIDATED COMPLAINT FOR ALLEGED VIOLATIONS OF ERISA**

**INTRODUCTION**

The ERISA statutory standing of any "participants," "beneficiaries" or "fiduciaries" to bring suit on behalf of their plans stems from their relationship with the ERISA-governed plans for which they sue. *See* 29 U.S.C. § 1132(a). Plaintiffs insist that a different, more relaxed approach should apply to their claims because they intend this case to be a class action. In Plaintiffs' view, waving the Rule 23 flag in their Amended Complaint relieves them of the obligation to plead the required statutory relationship with the ERISA plans they purport to represent – even if those plans number in the "hundreds if not more" (Am. Compl. ¶¶ 10, 15-24, 109-10, 113), and even if Plaintiffs don't claim to know anything about them or whether they have any interest in having this lawsuit filed on their behalf.

However, a "plaintiff may not avoid the standing inquiry merely by styling his suit as a class action." *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 119 (D. Mass. 2006). Decisions in the ERISA context and others confirm that the terms of the statute carry the day when it comes to a plaintiff's statutory standing to assert a cause of action. Here, the terms of the governing statutes make clear that Plaintiffs have standing to assert claims on behalf of the

plans in which they participate, but no more than that.  Thus, the Court should dismiss the claims that Plaintiffs purport to assert on behalf of plans other than those in which Plaintiffs themselves participate.

## **ARGUMENT**

**I.     Courts Have Not Embraced *Fallick* In The Statutory Standing Context.**

After spending several pages reciting (unproven) allegations having nothing to do with standing, Plaintiffs hang their hat on *Fallick v. Nationwide Mutual Insurance Co.*, 162 F.3d 410 (6th Cir. 1998) (an Article III decision), to support their position that Rule 23 relieves them of their obligation to establish standing to sue on behalf of the unidentified plans they purport to represent.  Plaintiffs argue the *Fallick* approach is supported by "abundant authority" (Pl. Opp. at 8-9), but the cases they cite actually demonstrate the opposite when it comes to statutory standing.  For example, in *Central States, Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-46 (2d Cir. 2007), the court addressed only Article III standing in the class settlement context, not ERISA statutory standing.[1]

Next, Plaintiffs vastly overstate *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) (a case brought by Plaintiffs' counsel), suggesting that the decision endorses *Fallick*.  But the plaintiff in *Wal-Mart* did not purport to assert claims on behalf of any other plans; rather, the sole issue was whether he had Article III standing to seek damages for periods pre-dating his participation in the Wal-Mart plan.  The court noted that, although Braden could not have suffered injury before he began participating in the plan, "that does not mean actions taken earlier cannot have caused his subsequent injury."  The Eighth Circuit went on to conclude that

---

[1]     Similarly, *Forbush v. J.C. Penney Co.*, 994 F.2d 1101 (5th Cir. 1993), did not address statutory standing at all.  Plaintiffs also point to district court decisions that have followed *Fallick*'s approach (Pl. Opp. at 9 n.5), but the vast majority of those cases do not actually analyze Section 502(a) statutory standing either.

he had statutory standing as a participant to sue for losses to *his* plan under Section 502(a)(2) "that [sweep] beyond his own injury." *Id.* at 593.

Plaintiffs attempt to make much of a sentence from *Fallick* reproduced in the *Wal-Mart* decision but they (perhaps opportunistically) take the sentence out of context.[2] The sentence that precedes it accurately reflects the holding of *Wal-Mart*: "Courts have recognized that a plaintiff with Article III standing may proceed under § 1132(a)(2) on behalf of *the plan* or other participants." *Id.* (emphasis added). Thus, the Rule 23 interpretation advocated by Plaintiffs was never even implicated, much less considered, in *Wal-Mart*. In fact, the Eighth Circuit simply confirmed what is obvious from the statute – when a defined contribution plan participant sues under Section 502(a)(2) to recover losses, he does so derivatively on behalf of the plan. *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 1024-25 (2008).

In short, *Wal-Mart* does not support Plaintiffs because it simply holds that a plaintiff *with statutory standing* (as Braden clearly had) can assert claims for injuries incurred by other participants in *his plan*, as long as he can establish an injury to himself from the same conduct of the defendant. Plaintiffs here advocate a much different outcome; they contend that, once they establish an injury and statutory standing to sue under *their plan,* the court should confer statutory standing on them to sue on behalf of any other plan. This outcome is not supported by either *Wal-Mart* or the statute.[3]

---

[2] "'[T]he standing related provisions of ERISA were not intended to limit a claimant's right to proceed under Rule 23 on behalf of all individuals affected by the fiduciary's challenged conduct, regardless of the representative's lack of participation in all the ERISA-governed plans involved.'" (Pl. Opp. at p. 11).

[3] Plaintiffs try to distinguish the statutory standing cases cited in Defendants' opening brief by pointing out that many of them involved plaintiffs who "lacked standing to bring claims on behalf of *any* plan" (Pl. Opp. at 14) (emphasis in original), but this is an artificial distinction. The inquiry is no different whether the plaintiff purports to sue on behalf of one plan or multiple plans.

*Brown v. Medtronic, Inc.*, 628 F.3d 451 (8th Cir. 2010), confirms the limited scope of *Wal-Mart*. There the Eighth Circuit re-affirmed (in the Article III context) that a participant who has not actually suffered a "loss" with respect to the challenged plan investment cannot maintain purported class claims under Section 502(a)(2). The court rejected the notion that "a purported 'abstract violation' of a fiduciary duty is sufficient to create standing for all persons to whom the duty is owed." *Id.* at 457 (citation omitted). While the court found it unnecessary to address statutory standing (since the plaintiff failed to clear the Article III hurdle, *id.* at n.2), the court's analysis reinforces the Eighth Circuit's measured view of standing in ERISA cases and suggests the court would likely *not* adopt the *Fallick* approach, having once declined to do so.[4]

This Court has also taken a cautious approach to the rule espoused in *Fallick*, citing a prior holding that a plaintiff lacked standing to sue on behalf of plans in which s/he did not participate and expressly declining to decide the issue. *Ruppert v. Principal Life Ins. Co.*, 252 F.R.D. 488, 498-99 & n.3 (S.D. Iowa 2008). *Fallick* has been on the books for nearly 13 years, yet not a single appellate court has applied it to ERISA statutory standing as Plaintiffs seek to do here. This Court should not adopt it either.

## II.  Plaintiffs Cannot Use Rule 23 To Obtain Statutory Standing Where It Does Not Otherwise Exist.

Plaintiffs are suing under ERISA Sections 502(a)(2) and 409(a), which together permit a "participant" to recover losses to "the plan" in which he or she participates. *See* 29 U.S.C. §§ 1109(a), 1132(a)(2). Since "the plan" takes legal title to any recovery, claims under Section

---

[4] *See Hastings v. Wilson*, 516 F.3d 1055, 1060-61 (8th Cir. 2008) (holding that ERISA plaintiffs lacked standing to bring suit claiming defendants breached fiduciary duties related to plans in which plaintiffs did not participate; declining to adopt *Fallick*). *See also Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1196 (8th Cir. 1998) (holding that an individual who lacked standing to sue under one ERISA plan could not obtain standing over that same plan by asserting claims on behalf of a purported class); *Harley v. Minn. Mining & Mfg. Co.*, 284 F.3d 901, 907 (8th Cir. 2002) (refusing to apply ERISA Sections 502(a)(2) and 409(a) to permit monetary relief to overfunded defined benefit where "investment loss did not cause actual injury to plaintiffs' interests in the Plan"); *McCullough v. Aegon USA, Inc.*, 585 F.3d 1082, 1085-87 (8th Cir. 2009) (reaffirming *Harley*'s restrictive view of standing and extending it to claims for injunctive relief).

502(a)(2) are considered derivative in nature, *i.e.*, a participant brings them "in a representative capacity on behalf of the plan as a whole." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985). Thus, from a statutory (and practical) perspective, a plan participant is not required to use Rule 23 to assert Section 502(a)(2) claims on behalf of "the plan." *See, e.g., Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006) (plan participant is not required to meet the requirements of Rules 23 or 23.1 in action on behalf of the plan under Section 502(a)(2)); *Blankenship v. Chamberlain*, 695 F. Supp. 2d 966, 972, 974 (E.D. Mo. 2010) ("ERISA does not expressly require joiner of all plan beneficiaries as a prerequisite to a section 502(a)(2) action against a plan fiduciary . . . ."); *In re AEP ERISA Litig.*, No. C2-03-67, 2009 WL 3854943, at *3-4 (S.D. Ohio Nov. 17, 2009) ("the law is clear about the fact that ERISA does not require that plaintiffs meet the requirements of Rule 23 in order to serve in a representative capacity for purposes of a section 502(a)(2) claim") (collecting cases).[5] Thus, using the class action device for a suit under Section 502(a)(2) by a participant under his plan does not run afoul of the prohibition against using Rule 23 to expand substantive rights. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999).

   Here, Plaintiffs do not allege that they have standing to assert Section 502(a)(2) claims on behalf of any plans besides their own. To the contrary, by insisting that the Court proceed straight to a Rule 23 inquiry with respect to those plans, Plaintiffs concede that they *need* Rule 23 in order to assert claims "in a representative capacity on behalf of the [other] plan[s,]" *Russell*, 473 U.S. at 142 n.9, because they can't do it in a derivative action under Section

---

[5] That said, the ERISA plaintiffs' bar is fond of seeking class certification for Section 502(a)(2) lawsuits, which opens the door to a common fund from which they may seek attorneys' fees in the event of a settlement or judgment.

502(a)(2).[6] The Supreme Court made clear that in *Oritz* that "no reading of the Rule [23] can ignore the [Rules Enabling Act's] mandate that "rules of procedure 'shall not abridge, enlarge or modify any substantive right.'" *Ortiz*, 527 U.S. at 845 (citations omitted); *see also* 28 U.S.C. § 2072(b). Plaintiffs cannot use Rule 23 as a bootstrap to expand their substantive rights under ERISA by asserting claims that ERISA itself does not give them standing to bring.

Plaintiffs also suggest that they can assert claims on behalf of unknown plans because there is nothing in ERISA that prohibits it. (Pl. Opp. at 17 n.11). The question is not whether ERISA "bar[s]" a suit, but rather "whether the statute affirmatively authorizes such a suit." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 n.5 (1993). The only reason Plaintiffs have standing to sue under ERISA is by virtue of their relationship as "participants" to their own plans. *See* 29 U.S.C. §§ 1132(a), 1002(7); Def. Opening Br. at 9-10 (discussing ERISA's civil enforcement provisions). There is no such thing as a "participant" at large with roaming private attorney general authority to enforce the statute – that authority is reserved for the Secretary of Labor. *See* 29 U.S.C. §§ 1132(a)(2), (a)(4)-(6), (a)(8), (c)(2), (c)(4)-(b). If Congress had intended to grant participant-plaintiffs such broad power to enforce the statute at large, it could have written ERISA Section 502(a) to permit participants to sue on behalf of "any" plan. It did not. "The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a 'comprehensive and reticulated statute.'" *Russell*, 473 U.S. at 146 (citation omitted).

In fact, the legislative history suggests the opposite. Early versions of ERISA contained express authorizations for broad class action treatment of suits by participants and beneficiaries.

---

[6] Defendants are aware of no authority holding that a plan participant has standing to bring a an action on behalf of other plans in which he does not participant under Section 502(a)(2) without using Rule 23.

*See* H.R. 2, 93rd Congress, § 503(g)(1) (Feb. 28, 1974) (House version requiring that participant suits brought to enforce ERISA be brought as class actions); S. 1179, 93rd Congress, S. Rep. No. 93-383, § 501(d)(3) (Aug. 21, 1973) (Senate version providing that participants may bring a class action under ERISA). Commentators, however, proposed that Congress eliminate these express class action provisions. *See, e.g.*, Statement of John S. Nolan Before the Subcommittee on Private Pension Plans, Committee on Finance, U.S. Senate (May 31, 1973) ("Provisions in S.4 contemplating enforcement by class actions on behalf of employees should in all events be abandoned as highly inefficient and an unnecessary burden on our judicial system") (citation omitted). The final legislation did just that, and includes no reference to class actions, much less an express requirement that fiduciary breach claims be brought as class actions. *Compare* 29 U.S.C. § 1132, *with* H.R. 2, 93rd Congress, § 503(g)(1), *and* S. 1179, 93rd Congress, S. Rep. No. 93-383, § 501(d)(3). Thus, ERISA's final provisions suggest that participants and beneficiaries be permitted to sue only with respect to their own plans. *See* 29 U.S.C. §§ 1132(a)(2), (a)(3).

**III.   Analogous Authority Favors The Interpretation Advocated By Defendants.**

Analogous statutory standing decisions outside the ERISA context have limited standing to assert investment-related claims that expanded beyond the plaintiff's own investments. For example, in *In re Mutual Funds Investment Litigation*, 519 F. Supp. 2d 580 (D. Md. 2007), the court considered whether a shareholder of one mutual fund could bring a Section 36(b) action under the Investment Company Act of 1940 ("ICA"), 15 U.S.C. § 80a-35(b), on behalf of shareholders of other mutual funds against an investment adviser common to all the funds. Relying on the statute's plain language, the court held that the plaintiffs lacked standing to bring a Section 36(b) action on behalf of mutual funds in which they were not shareholders because they could not satisfy the statute's requirement that they be "security holders" of the funds on

behalf of which a claim is brought. *Id.*; *see also In re Am. Mut. Funds Fee Litig.*, No. CV 04-5593, 2005 WL 3989803, at *1 (C.D. Cal. Dec. 16, 2005) (dismissing purported class action and derivative claims with respect to the 10 of 29 challenged mutual funds in which plaintiffs had never invested).

This Court recently held that plaintiffs who invested in a Principal "fund of funds" mutual fund lacked statutory standing to assert an ICA Section 36(b) excessive fees claim on behalf of investors in the underlying funds. *Curran v. Principal Mgmt. Corp.*, No. 4:09-cv-00433, 2011 WL 223872, at **1-4 (S.D. Iowa Jan. 24, 2011). While the *Curran* plaintiffs argued their investment with the fund of funds was sufficient to establish a connection with the underlying funds, the Court found that plaintiffs failed to identify any "investment contracts" between themselves and the underlying funds; thus, they did not hold a "security" within the meaning of the statute and did not qualify as "security holders" who could assert Section 36(b) claims against an investment adviser.

The facts are similar here. Plaintiffs do not actually own or hold interests in the Property Account. Account units are held by and in the name of their plan's trustee along with other investment funds held by the plan. *See* 29 U.S.C. § 1103(a). Just as the absence of an "investment contract" with the underlying funds doomed the *Curran* plaintiffs' ability to assert Section 36(b) claims on behalf of those funds, the absence of a "participant" (or "beneficiary" or "fiduciary") relationship between Plaintiffs and the unnamed plans on whose behalf they purport to sue dooms Plaintiffs' ability to assert ERISA claims on behalf of those plans.

**IV.     The Expansive Approach To Standing Advocated By Plaintiffs Is Inconsistent With Sound Policy.**

Plaintiffs argue that the manner in which Principal managed the Property Account made it a fundamentally imprudent investment. (Pl. Opp. at 6). However, the prudence of the

Property Account in a self-directed 401(k) plan can be evaluated only in the context of the menu of each plan's investment options, a strong policy reason for rejecting the expansive standing advocated by Plaintiffs. *See* 29 C.F.R. § 2550.404a-1(b) (ERISA's Section 404(a)(1)(B) "prudence" regulations, which embrace modern portfolio theory). This issue was recently highlighted by the Seventh Circuit in *Spano/Beesley v. Boeing Co./Int'l Paper Co*, --- F.3d ----, Nos. 09-3001, 09-3018, 2011 WL 183974 (7th Cir. Jan. 21, 2011):

> Here, if a proper class can be constituted on remand with a representative who personally held one or both of the allegedly imprudent funds, the question on the merits would be whether the mere existence of a fund that is undesirable taints the entire plan, or, if more is needed, what would that be? A showing of deliberate misrepresentations about soundness? A showing that participants had such a small number of options that they were forced into the bad fund? A showing that the menu of options included only, or mostly, imprudent options? Something else?

*Id.* at *14; *see also Laborers Nat'l Pension Fund v. N. Trust Quantitative Advisors, Inc.,* 173 F.3d 313, 322 (5th Cir. 1999) (finding that the district court erroneously evaluated the prudence of the investment in isolation rather than looking at other plan investments). Plaintiffs do not have statutory standing to adjudicate these issues for any plans other than their own.

Plaintiffs also suggest that allowing them to assert claims on behalf of the unidentified plans would only "increase the number of Plans that will obtain relief if this case is successful" without affecting the "substantive" ERISA rights of those other plan participants. (Pl. Opp. at 20). To the contrary, Plaintiffs seek injunctive relief to put their plans (and all others they purport to represent) in the position they would have maintained if the Defendants had not "breached their fiduciary duties." The alleged breach is the Defendants' failure to maintain cash balances in the Account that would have facilitated immediate withdrawals by Plaintiffs no matter how catastrophic the real estate market crash and how large the "run on the bank." Based upon the allegations of the Amended Complaint, this would have required that the Account

historically maintain a 25-35% cash "cushion." Thus, putting Plaintiffs in the position they would have been in but for the "breach" requires retroactively deeming the Account to have maintained a 25-35% cash cushion, which would dramatically reduce the Account's historical returns to the detriment of the majority of plan participants that did *not* request withdrawals. It is hard to imagine a more substantive invasion of these unnamed participants' rights under their respective plans. Plaintiffs are free to pursue these theories as to their own plans and to grapple with the class certification issues they raise *within* those plans, but they have no statutory right under ERISA to do so as to any other plans. Those are decisions for the participants, beneficiaries and fiduciaries of the "hundreds if not more" unnamed plans to make.

## CONCLUSION

For the reasons set forth above and in Defendants' opening brief the Court should dismiss all claims asserted on behalf of ERISA plans other than the plans in which Plaintiffs participate.

Respectfully submitted,

Dated: March 1, 2011					MORGAN, LEWIS & BOCKIUS LLP

*/s/ Gregory C. Braden*
Gregory C. Braden (admitted *pro hac vice*)
gbraden@morganlewis.com
1111 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 739-3000
Fax: (202) 739-3001

Deborah S. Davidson (admitted *pro hac vice*)
ddavidson@morganlewis.com
77 West Wacker Drive
Chicago, IL 60601-5094
Tel: (312) 324-1000
Fax: (312) 324-1001

       Nicole Diller (admitted *pro hac vice*)
       ndiller@morganlewis.com
       One Market, Spear Street Tower
       San Francisco, CA 94105
       Tel: (415) 442-1000
       Fax: (415) 442-1001

WHITFIELD & EDDY P.L.C.

Brian L. Campbell, AT0001361
campbell@whitfieldlaw.com
317 Sixth Ave., Suite 1200
Des Moines, IA 50309-8002
Tel: (515) 246-5503
Fax: (515) 246-1474

ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I, Gregory C. Braden, hereby certify that on March 1, 2011, a copy of DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO PARTIALLY DISMISS PLAINTIFFS' AMENDED CONSOLIDATED COMPLAINT FOR ALLEGED VIOLATIONS OF ERISA was filed electronically, and is being served electronically this date upon all involved parties participating in the Court's electronic filing system or first-class mail, postage pre-paid.

Dated: March 1, 2011                MORGAN, LEWIS & BOCKIUS LLP

*/s/ Gregory C. Braden*
Gregory C. Braden (admitted *pro hac vice*)
gbraden@morganlewis.com
1111 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 739-3000
Fax: (202) 739-3001