IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| | * | |
| In Re PRINCIPAL U.S. PROPERTY | * | |
| ACCOUNT ERISA LITIGATION | * | 4:10-cv-198 |
| | * | |
| | * | |
| | * | |
| | * | ORDER |
| | * | |
| | * | |

On October 22, 2010, Francisco Carpio, Eric Cruise, Greta de Kock, David Engelbert,

John Fischer, Jaime Jover, Denis Mullaney, Heinz Rosen, and Michael E. Zall ("Plaintiffs"), on

behalf of themselves and others similarly situated, filed an Amended Consolidated Complaint

(hereinafter "Complaint") against Principal Global Investors, LLC, Principal Life Insurance Co.,

Principal Management Co., Principal Real Estate Investors, LLC, and John Does 1-20

("Defendants").  Clerk's No. 81.  On November 24, 2010, Defendants filed a "Motion to

Partially Dismiss Plaintiffs' Amended Consolidated Complaint for Alleged Violations of

ERISA," pursuant to Federal Rule of Civil Procedure 12(b)(6).  Clerk's No. 83.  Plaintiffs filed a

Resistance to Defendants' Motion on January 27, 2011.  Clerk's No. 85.  Defendants filed a

Reply on March 1, 2011.[1]  Clerk's No. 87.  Plaintiffs filed a Sur-Reply on March 22, 2011.

---

[1]     Plaintiffs filed a Motion to Strike Defendants' Reply Brief on March 11, 2011, contending that it violated Local Rule 7(g) in that it exceeds the page limitation and reargues points made in Defendants opening brief.  *See* L.R. 7(g) ("Ordinarily, reply briefs are unnecessary, and the court may elect to rule on a motion without waiting for a reply brief. However, the moving party may, within 7 days after a resistance to a motion is served, file a reply brief, not more than 5 pages in length, to assert newly-decided authority or to respond to new and unanticipated arguments made in the resistance.  In the reply brief, the moving party must not reargue points made in the opening brief.").  The Court agrees that the Reply Brief violates Local Rule 7(g) in these ways, and further notes that the Reply Brief was untimely, having been filed well over a month after Plaintiffs filed their resistance to Defendants' Motion to Partially Dismiss.  Nonetheless, on March 18, 2011, the parties filed a joint stipulation

Clerk's No. 93.  The matter is fully submitted.

## I.  STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  In reviewing a complaint, a court must "accept as true all of the factual allegations contained in the complaint," and must draw "all reasonable inferences . . . in favor of the plaintiff." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1939, 1949 (2009) (citing *Twombly*, 550 U.S. at 570).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Twombly*, 550 U.S. at 570.  "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'  It is not, however, a 'probability requirement.'" *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

## II.  FACTUAL ALLEGATIONS OF THE COMPLAINT

Plaintiffs' Complaint asserts that Defendants breached their fiduciary duties to Plaintiffs,

---

whereby Plaintiffs, who also violated the Local Rules by failing to confer with Defendants before filing their Motion to Strike, *see* L.R. 7(l) ("All non-dispositive motions must contain a representation that counsel for the moving party has conferred in good faith with counsel for all other parties . . . ."), agreed to withdraw their Motion to Strike and Defendants consented to the Court's consideration of Plaintiffs' Sur-Reply Brief.  *See* Clerk's No. 89.

in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §

1001 et seq.  Each named Plaintiff in this action is a participant in an ERISA "employee pension

benefit plan"[2] offered by his or her respective employer.[3]  *See* Compl. ¶¶ 15-23.  Each Plaintiff

further had funds from his or her employee pension benefit plan invested in a product offered by

Defendants, known as the "Principal U.S. Property Separate Account" (the "Property Account"

or the "Account").

According to the Complaint, the Property Account is an "open-end, commingled,

insurance company separate account invested primarily in commercial real estate holdings."  *Id*. ¶

31.  The Property Account was marketed "to retirement plans throughout the country as a 'low

risk' retirement savings option with a 'strong focus on liquidity' that was open to daily

withdrawals," and it was "offered to ERISA plan participants as an investment option in the

participants' individual account plans, such as 401(k) plans and other defined contribution plans,

as well as to other qualified investors, including participants in defined benefit plans."  *Id*. ¶ 32.

In essence, Defendants aggregated the contributions by various employee pension benefit plan

---

[2]       29 U.S.C. § 1002(2)(A) provides that an "employee pension benefit plan" is "any plan, fund, or program . . . established or maintained by an employer . . . to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program–(i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond. . . ."

[3]       Francisco Carpio is a participant in the Share Resources, Inc. and Affiliates Retirement Plan; Eric Cruise is a participant in the Rogers Fence Co., Inc. Retirement Plan; Greta de Kock is a participant in the Library Binding Service, Inc. Employee Pension Benefit Plan; David Engelbert is a participant in the Haldex Brake Products Corp. 401(K) Savings Plan, John Fischer is a participant in the Southeastern Container Inc. Retirement Savings Plan, Jaime Jover is a participant in the Wynn Resorts Ltd. 401k Plan, Dennis Mullaney is a participant in the Judicial Title Insurance Agency LLC Incentive Savings Plan, Heinz Rosen is a participant in the Page One Consultants, Inc. 401(k) Plan, and Michael Zall is a participant in the ASICS America Corp. Retirement Savings Plan.  Compl. ¶¶ 15-23.

participants and invested the funds in real estate assets. *Id.* ¶ 34. "Each participant was entitled to a *pro rata* share of the net value of the Account, based on how much each participant had contributed, and adjusted by the change in the Account's value since the participant's investment." *Id.* The Property Account was "open to contributions and withdrawals daily." *Id.* ¶ 35.

On September 26, 2008, "in the face of a collapsing real estate market and rapidly mounting withdrawals," Defendants closed the Property Account to normal withdrawals and implemented a withdrawal queue. *Id.* ¶ 76. Defendants did not provide advance notice to investors of its decision; rather, it made the following announcement at the same time it imposed the withdrawal queue:

> On September 26, 2008, Principal Life Insurance Company ("Principal Life") determined that it was in the best interest of investors to apply a contractual limitation which delays the payment of withdrawal requests and provides for payment of such requests on a pro rata basis (a "Queue") as cash becomes available for distribution, as determined by Principal Life. The implementation of the Queue does not change the Account's strategy of seeking to achieve good risk adjusted returns through investment in core real estate.

*Id.* After imposing the withdrawal queue, Principal altered its descriptions of the Property Account's investment objectives and philosophy by removing several references to the Account's "strong liquidity focus." *Id.* ¶ 79.

Plaintiffs allege that Defendants' imposition of a withdrawal queue "locked up participants' retirement savings in the Account" and prevented "plan participants from withdrawing their money from the Account . . . forc[ing] these investors to sustain staggering losses as the assets in the Account declined sharply in value." *Id.* ¶ 3. Plaintiffs claim that over two years after the withdrawal queue was imposed, Defendants have "still not allowed investors

to withdraw all of the money they requested to be withdrawn from the Property Account," and
that the per share value of the account declined from $704.32 at the time the queue was imposed
to $476.30 as of October 22, 2010.  *Id.* ¶¶ 3-4.  According to Plaintiffs, Defendants breached
their fiduciary duties to investors by "grossly mismanag[ing]" the Property Account in at least
four distinct ways:  1) by failing to adopt and implement an adequate liquidation strategy; 2) by
failing to manage liquidity appropriately even with the strategy Defendants actually adopted; 3)
by relying on substantial net inflows of capital from investors and disregarding the substantial
deterioration in cash flow from investors that occurred after 2005; and 4) by pursuing portfolio
management strategies, "including the continued acquisition of major properties at imprudent
prices," after a prudent fiduciary would have begun attempting to reduce the portfolio's risk
exposure.  *Id.* ¶ 51.

Plaintiffs seek to bring this action both on behalf of themselves and on "behalf of a class
consisting of all other similarly situated ERISA defined contribution plan participants and
beneficiaries who have attempted to withdraw their investment from the Property Account, and
whose plans have suffered losses because they were instead placed into the Withdrawal Queue."
*Id.* ¶ 10.  On behalf of this putative class, Plaintiffs seek to "recover losses suffered by these
Plans," as well as other equitable and injunctive relief.  *Id.*

### III.  LAW AND ANALYSIS

Defendants seek to dismiss the class allegations of the Complaint.  Defendants do not
contend that Plaintiffs lack Article III or statutory standing to bring this action on behalf of
themselves or on behalf of the particular employee pension benefit plans in which they

participate.[4]   Rather, Defendants argue that "Plaintiffs do not allege that they were participants,

beneficiaries or fiduciaries of any of the 'hundreds if not more' of other ERISA plans under

which they purport to sue." Def.'s Br. at 7.   According to Defendants, Plaintiffs are precluded

from bringing their claims on behalf of any plan in which they are not a participant, because they

lack statutory standing to do so under ERISA.   Plaintiffs vehemently resist Defendants' motion,

countering that Defendants' argument is "fundamentally flawed" in that it "conflate[s] the

requirements of standing with Plaintiffs' ability to bring an ERISA claim as a class action under

Fed. R. Civ. P. 23." Pls.' Br. at 1.

Plaintiffs assert that they are authorized to sue under ERISA based on 29 U.S.C. §§ 1109,

1132(a)(2), and 1132(a)(3).  Compl. ¶ 10.  Section 1132(a), entitled "Persons empowered to

bring a civil action," provides in pertinent part:

> A civil action may be brought–
>
> (2)      by the Secretary, or by a participant, beneficiary or fiduciary for
>          appropriate relief under section 1109 of this title;
>
> (3)      by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice
>          which violates any provision of this subchapter or the terms of the plan, or
>          (B) to obtain other appropriate equitable relief (i) to redress such
>          violations or (ii) to enforce any provisions of this subchapter or the terms
>          of the plan.

---

[4]      Article III standing is a threshold question in every federal court case. *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003).  "[T]he doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).  "[T]he question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue." *United States v.1998 BMW "I" Convertible*, 235 F.3d 397, 399 (8th Cir. 2000) (quoting *Flast v. Cohen*, 392 U.S. 83, 99-100 (1968)); *see also Sierra Club v. Morton*, 405 U.S. 727, 731 (1972) (a litigant must possess "a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy").

Section 1109(a), in turn, provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

Defendants assert that these provisions' references to "*such* plan" and "*the* plan" "[o]bviously . . . presume[] that the 'participant' bringing suit is a participant in the plan for which he seeks relief." Defs.' Br. at 10. Thus, Defendants argue that since Plaintiffs have not alleged that they are participants in any ERISA plan "other than in the nine separate plans identified" in the Complaint, they "lack statutory standing to bring claims on behalf of any other ERISA plans." *Id*.

In *Fallick v. Nationwide Mutual Insurance Co.*, the Sixth Circuit rejected an argument extremely similar to that proffered by Defendants. *See* 162 F.3d 410 (6th Cir. 1998). In that case, Arthur Fallick ("Fallick") sued his employer, Nationwide Mutual Insurance Co. ("Nationwide"), asserting that Nationwide, as the fiduciary of Fallick's ERISA-governed medical benefits plan, "improperly denied benefits to him and others by implementing a methodology for computing reasonable and customary limitations that is at odds with the provisions of the [plan]." *Id*. at 412. In light of the fact that Nationwide "also acted as the administrator or provided medical benefits through insurance contracts to other ERISA-governed plans of which Fallick [was] not a member," Fallick additionally sought to certify and represent "a class of all persons who are participants or beneficiaries of ERISA-regulated health insurance plans administered or insured by Nationwide and who, as of January 1, 1990, made a claim for health care benefits and

were improperly denied reimbursement of medical expenses." *Id*. at 411, 421.

Upon Nationwide's motion to dismiss, the district court began its analysis by first determining that Fallick possessed standing to assert claims under ERISA with respect to his own medical benefits plan. *Id*. at 421. The district court went on to conclude, however, that "Fallick lacked standing under Article III of the U.S. Constitution to represent participants in benefit plans other than his own." *Id*. at 412. In so holding, the district court stated:

> "The proposed class has been drawn to include class members who are participants or beneficiaries in plans that Fallick is not. Plaintiff Fallick clearly lacks individual standing to assert those causes of action. Class certification in this case would not only be improper, but it would be insufficient to bestow upon plaintiff the requisite individual standing to invoke federal jurisdiction over the claims he asserts in his amended complaint on behalf of others. This is the case regardless of the extent to which the legal claims against defendants may be typical of participants of other plans, and regardless of the extent to which his factual circumstances may be similar to those individuals."

*Id*. at 421 (quoting district court order).

On appeal, the Sixth Circuit determined that the district court's analysis was "fundamentally flawed in two important respects":

> First, conceptually, it confuses the issue of a plaintiff's standing under Article III vis-á-vis a defendant with the relationship between a potential class representative and absent class members, which is governed by Rule 23 of the Federal Rules of Civil Procedure. Second, the district court overlooks several apposite decisions of courts in both this Circuit and others that hold that an individual in one ERISA benefit plan can represent a class of participants in numerous plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans. *See Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101 (5th Cir. 1993); *Misch v. Community Mut. Ins. Co.*, 1995 U.S. Dist. LEXIS 5059 (S.D. Ohio Feb. 15, 1995); *Sutton v. Medical Serv. Assoc. of Pennsylvania*, 1993 WL 273429 (E.D. Pa. 1993); *Doe I v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466 (N.D. Ill. 1992).

*Id*. at 422 (some internal citations omitted).

More specifically, the Sixth Circuit found that once an ERISA plaintiff has established

his own standing to challenge a practice of a defendant, the question of whether he "will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23. . . ." *Id.* at 423 ("[O]nce the district court correctly determined that Fallick had standing to bring suit under ERISA against Nationwide with respect to its application of reasonable and customary limitations to its determination of medical benefits–a methodology which, by Nationwide's own admission, it employs in all the benefits plans which Fallick wishes to include under the aegis of the proposed class–the court should then have analyzed whether Fallick satisfied the criteria of Rule 23 with respect to absent class members."); *see also id.* at 424 ("[O]nce a potential ERISA class representative establishes his individual standing to sue his own ERISA-governed plan, there is no additional constitutional standing requirement related to his suitability to represent the putative class of members of other plans to which he does not belong.").

Numerous other courts have reached similar conclusions, either on their own or in reliance upon the reasoning in *Fallick*. For instance, in *In re Schering -Plough ERISA Litigation*, the District of New Jersey was confronted with a dispute as to whether the plaintiffs possessed standing to bring an ERISA claim on behalf of certain plans in which they did not participate. No. 08-cv-1432, 2010 WL 2667414, at *3 n.5 (D.N.J. June 29, 2010). The court concluded that, "[w]hile an individual not participating in an ERISA plan cannot commence an action directly on behalf of said plan, he may represent those plans as part of a class action." *Id.* (citing *Dann v. Lincoln Nat'l Corp.*, 708 F. Supp. 2d 481, 487 (E.D. Pa. 2010)). Likewise, in *Haddock v. Nationwide Financial Services, Inc.*, Nationwide argued that the plaintiff trustees lacked standing to sue on behalf of ERISA benefit plans for which they were not fiduciaries. 262 F.R.D. 97, 110

(D. Conn. 2009). In rejecting Nationwide's claim, the district court held:

> Nationwide is erroneously attempting to conflate the standing and class certification requirements, when, in fact, the two inquiries are logically separate and distinct. Although it is true as a matter of basic ERISA law that trustees lack standing to sue on behalf of a plan for which they are not a fiduciary, that reasoning does not translate to the class certification context. To adopt Nationwide's position would eliminate class certification as an option for any statutorily-qualified party suing an ERISA fiduciary for breach of fiduciary duty on behalf of an ERISA-covered plan.

*Id.*; *see also Cent. States SE and SW Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007) (stating in a proposed ERISA class action: "As a threshold matter, we note that only one of the named Plaintiffs is required to establish standing in order to seek relief on behalf of the entire class") (citing 1 Alba, Conte & Herbert B. Newberg, *Newberg on Class Actions* § 2:6 n.3 (4th ed. 2002), for the proposition that once a named plaintiff demonstrates individual standing as against each defendant, the inquiry shifts to a class action analysis); *Forbush* 994 F.2d at 1106 (recognizing that the named plaintiff was a participant in only one of four plans involved in a putative class action, but nonetheless moving directly to an analysis of whether the named plaintiff's relationship with the proposed class satisfied Rule 23); *Charters v. John Hancock Life Ins. Co.*, 534 F. Supp. 2d 168, 172 (D. Mass. 2007) (concluding that the reasoning of *Fallick*, *Forbush*, and *Central States*, permitting "plaintiffs to bring class actions under ERISA on behalf of plans to which they are strangers as long as they meet Fed. R. Civ. P. 23 requirements," is "sound and applies equally to beneficiaries and fiduciaries suing on behalf of other representatives of plans with which they are not associated"); *Selby v. Principal Mut. Life Ins. Co.*, 197 F.R.D. 48, 58 n.14 (S.D.N.Y. 2000) ("When the named plaintiff in an ERISA class action challenges an insurer's practice that the insurer engages in with respect to all of its plans, the court will allow the plaintiff to represent

-10-

persons in the insurer's other insurance plans.").

Defendants first urge the Court to reject the reasoning of *Fallick* and similar cases because "[t]he *Fallick* decision has not been adopted by any court in this Circuit." Def.'s Br. at 13. Though no court in this circuit has yet had occasion to expressly consider *Fallick* in the context at issue here, the Eighth Circuit has cited it twice. In the first case, *Hastings v. Wilson*, the plaintiffs cited *Fallick* in support of their assertion that they had standing to represent a class of participants in ERISA benefits plans other than their own. 516 F.3d 1055, 1061 (8th Cir. 2008). The Eighth Circuit did not have occasion to analyze *Fallick*'s applicability, however, because it had already determined that it lacked subject matter jurisdiction over the named plaintiffs' claims against *their own plan* due to a mandatory arbitration provision; thus, the plaintiffs could not bring a claim on behalf of another plan in which they were not participants. *See id*. ("Our circuit has not adopted [the *Fallick*] rule, and we need not decide whether to adopt such a rule at this time. Because the district court does not have subject matter jurisdiction over the breach of fiduciary duty claims involving the IAM Plan, [plaintiffs] cannot rely on those claims to establish standing for similar causes of action brought on behalf of [participants and beneficiaries of another plan]."). Though Defendants attempt to convince the Court that *Hastings* indicates "it is unlikely that [the Eighth Circuit] would adopt *Fallick*'s view of statutory standing," the Court disagrees. Indeed, *Hastings* did little more than affirm the well-settled proposition, which notably is entirely consistent with the reasoning in *Fallick*, that no plaintiff may represent a class of similarly situated persons unless he first has standing to bring a claim of his own. *See, e.g., Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) ("That a suit may be a class action, however, adds nothing to the question of standing, for even named

plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)); *Fallick*, 162 F.3d at 423 ("A potential class representative must demonstrate individual standing vis-á-vis the defendant; he cannot acquire such standing merely be virtue of bringing a class action."); *Johnson v. Teasdale*, 456 F. Supp. 1083, 1088 n.2 (W.D. Mo. 1978) ("An individual purporting to represent a class must himself have standing before he can seek relief on behalf of the class he seeks to represent.").

Moreover, the second case in which the Eighth Circuit cited *Fallick* convinces the Court that it *would* adopt the position advanced in *Fallick*. In *Braden v. Wal-Mart Stores, Inc.*, the Eighth Circuit considered a case where a Wal-Mart employee brought suit, on behalf of himself and others similarly situated, against Wal-Mart for breach of fiduciary duties under an employee benefit plan governed by ERISA. 588 F.3d 585, 589 (8th Cir. 2009). The district court determined that the employee lacked constitutional standing to assert claims based on breaches of fiduciary duty prior to the date he first contributed to the benefit plan, on the basis that the employee could not have personally suffered injury prior to that date. *Id*. at 589, 590. The appellate court reversed, stating:

> Article III generally requires injury to the plaintiff's personal legal interests, but that does not mean that a plaintiff with Article III standing may only assert his own rights or redress his own injuries. To the contrary, constitutional standing is only a threshold inquiry, and "*so long as Article III is satisfied, persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others*. In such a case, a plaintiff may be able to assert causes of action which are based on conduct that harmed him, but which sweep more broadly than the injury he personally suffered.

*Id*. at 591-92 (emphasis added).  The Eighth Circuit concluded that the employee had standing

under Article III, and that § 1132(a)(2) provided him a cause of action to "seek relief for [his]

entire Plan" and to "seek relief under § 1132(a)(2) that sweeps beyond his own injury."  *Id*. at

593.  In support of this conclusion, the Circuit noted that "[c]ourts have recognized that a

plaintiff with Article III standing may proceed under § 1132(a)(2) on behalf of the plan or other

participants," citing specifically to *Fallick*'s holding that "the standing related provisions of

ERISA were not intended to limit a claimant's right to proceed under Rule 23 on behalf of all

individuals affected by the . . . challenged conduct, *regardless of the representative's lack of*

*participation in all the ERISA-governed plans involved*."  *Id*. (citing *Fallick*, 162 F.3d at 423

(emphasis added)).

     Defendants next urge the Court to reject *Fallick* because "it reflects an impermissible

expansion of statutory standing under ERISA."  Def.'s Br. at 13.  The Eastern District of

Pennsylvania considered and rejected precisely this argument in *Sutton*:

> Defendants do not contest plaintiff Sutton's standing to represent a class composed
> of members of his own ERISA-protected plan.  Nonetheless, they assert that, under
> ERISA, he does not have "standing" to represent a class composed of members of
> plans of which he is not himself a member.  Defendants would be correct if
> permitting this action to proceed as a class action were an expansion of the limited
> remedies Congress provided to private litigants under Section 1132.  As the Supreme
> Court stated in *Pilot Life Insurance Company v. Dedeaux*, 481 U.S. 41, 54 (1987)
> (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985) (emphasis
> original to *Russell*):
>
> > The six carefully integrated civil enforcement provisions found in
> > [Section 1132] of the statute as finally enacted . . . provide strong
> > evidence that Congress did not intend to authorize other remedies that
> > it simply forgot to incorporate expressly.
>
> The certification of a class in this action, however, is not an expansion of the

remedies available to plaintiff Sutton or to any other class member.  Under the definition of the class, each class member must have standing to bring a separate ERISA action based on his or her claim.  That is, in response to a claim to Pennsylvania Blue Shield, each class member must have received less than that to which he or she was entitled under his or her total coverage, together with an "explanation of benefits" form from Pennsylvania Blue Shield, the wording of which the member reasonably did not understand as informing him or her that the member had only to resubmit the claim on another claim form and/or to another address to receive the full benefits to which he or she was entitled.  If the class action is successful, each individual class member may be entitled to recover no more than that to which he or she would be individually entitled to recover if he or she had brought a separate action under Section 1132.  Similarly, if the class is successful on the counts for injunctive relief, this relief, too, is no more than that to which each individual would be entitled if he or she had brought a separate action under Section 1132.

1993 WL 273429, at *4-5 (some citations omitted).

In an attempt to discount *Sutton*'s analysis, Defendants argue that, to the extent *Sutton* can be read as supporting "*Fallick*'s conclusion that Rule 23 can expand ERISA statutory standing rights," it is "inconsistent with the Rules Enabling Act."  Def.'s Br. at 15.  Title 28, United States Code, § 2072(b) provides that the Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right."  Defendants aver that since the ERISA statute does not "affirmatively authorize[]" a class action suit such as the one here at issue, Rule 23 effectively enlarges the statute's scope.  *Id.* at 15-16.  The Court again disagrees.  Permitting a Rule 23 class action to proceed in this matter does not enlarge the scope of the *substantive* relief afforded by ERISA's provisions.  As the *Sutton* court recognized, each potential class member will be obligated to have standing to proceed, and each will be limited to the relief that would be applicable if suits were brought individually.  In *Shady Grove Orthopedic Associates., P.A. v. Allstate Insurance Co.*, the United States Supreme Court noted it has "rejected every statutory challenge [brought under the Rules Enabling Act] to a Federal Rule that has come before [it]."

-14-

130 S. Ct. 1431, 1442-43 (2010).  In so doing, the Court held:  "What matters is what the rule itself regulates:  If it governs only 'the manner and the means' by which the litigants' rights are 'enforced,' it is valid; if it alters 'the rules of decision by which the court will adjudicate those rights,' it is not."  *Id*. at 1442 (quoting *Miss. Pub. Corp. v. Murphree*, 326 U.S. 438, 446 (1946)). The Court further held:

> Applying that criterion, we think it obvious that rules allowing multiple claims (and claims by or against multiple parties) to be litigated together are also valid.  *See, e.g.*, Fed. Rules. Civ. P. 18 (joinder of claims), 20 (joinder of parties), and 42(a) (consolidation of actions).  Such rules neither change plaintiffs' separate entitlements to relief nor abridge defendants' rights; they alter only how the claims are processed. For the same reason, Rule 23–at least insofar as it allows willing plaintiffs to join their separate claims against the same defendants in a class action–falls within § 2072(b)'s authorization.  A class action, no less than traditional joinder (of which it is a species), merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits.  And like traditional joinder, it leaves the parties' legal rights and duties intact and the rules of decision unchanged.

*Id*. at 1443; *see also id*. at 1438 ("And like the rest of the Federal Rules of Civil Procedure, Rule 23 *automatically* applies 'in all civil actions and proceedings in the United States district courts." (emphasis in original)).  Thus, the Court agrees with Plaintiffs that "the fact that class certification will increase the number of Plans that will obtain relief if this case is successful does not transform the Rule 23 *procedural* device into a Rules Enabling Act-violating *substantive* device."  Pls.' Br. at 19.

Defendants finally propose that the Court should reject the reasoning of *Fallick* in favor of that in *Ruppert v. Principal Life Insurance Co.*, No. 06-cv-903, 2007 WL 2025233 (S.D. Ill. July 9, 2007).  In that case, Ruppert sued Principal for breach of fiduciary duty under his own ERISA plan, and additionally sought to represent a nationwide class of employee benefit plans. *Id*. at *1.  Principal sought to transfer the action from the Southern District of Illinois to the

Southern District of Iowa.  *Id*. at *1-2.  In resisting Principal's request, Ruppert argued that the case should not be transferred because Principal serviced a large number of benefit plans in the Southern District of Illinois, and thus had a substantial nexus with that venue.  *Id*. at *3.  The district court rejected Ruppert's argument for the following reason, among others:

> Finally and most fundamentally, however, the overall number of plans serviced by Principal is a red herring, as the only plan at issue in this case is the one of which Ruppert is a trustee.  "ERISA expressly confers standing on four classes of plaintiffs: beneficiaries, participants, fiduciaries, and the Secretary of Labor."  The category of "fiduciaries" authorized to bring suit under ERISA includes trustees of an employee benefit plan. . . .

> However, while Ruppert is a fiduciary of the Plan with standing to sue on behalf of the Plan, he does not have standing to sue on behalf of plans of which he is not a fiduciary.  "[I]n order to have standing to sue under ERISA as a 'fiduciary,' . . . a party must be (or have been) not merely a fiduciary of any ERISA plan, but rather, a fiduciary of the particular plan victimized by the alleged breach of victimized by the alleged breach of fiduciary duty."  This position "is consistent with the requirement that the plaintiff be a fiduciary pursuant to 29 U.S.C. § 1132(a), and that a plaintiff allege that he has sustained a personal injury in fact that is fairly traceable to the defendant's alleged unlawful conduct and likely to be redressed by the relief requested."

> In sum, Ruppert's lack of standing to sue on behalf of plans of which he is not a fiduciary renders irrelevant the question of the total number of plans serviced by Principal in this District and elsewhere.  Accordingly, in evaluating the propriety of transfer the Court places no significance on the matter of whether Principal provides services to a large number or a small number of plans within the District. . . ."

*Id*. at *4.

Ruppert is easily distinguishable.  First, *Ruppert*'s analysis of standing is dicta, as the extent of Ruppert's standing was not at issue in the motion to transfer pending before the court.  Indeed, at the time the transfer request was made, no class had yet been certified in the case, technically making the "the relevant venue question . . . whether venue is proper as to the parties representing, and in effect standing in for the absent class members."  *Abrams Shell v. Shell Oil*

*Co.*, 343 F.3d 482, 490 (5th Cir. 2003); *see also Jones v. Walgreen Co.*, 463 F. Supp. 2d 267,

272 (noting that "determination of class certification is . . . crucially important to the propriety of

transfer").  Second, "[t]o the extent that *Ruppert*'s language about standing is not dicta, there is

nothing to suggest that the Court's reasoning on the issue of standing was directed to the issue

whether an ERISA trustee (or plan participant, beneficiary, or other fiduciary) has the authority

or ability to seek to certify a class." *Haddock*, 262 F.R.D. at 111-12.

The Court has carefully reviewed other cases cited in Defendants' Brief that Defendants

claim support their position that Plaintiffs' class allegations must be dismissed.  Each of these

cases is either inapposite, or distinguishable, for reasons well-articulated in Plaintiffs' Brief

resisting Defendants' Motion to Partially Dismiss.  *See* Pls.' Br. at 14-16.  More importantly,

however, the Court finds the reasoning of *Fallick* compelling, particularly when viewed in light

of Eighth Circuit jurisprudence citing it.

## IV.  CONCLUSION

Accordingly, for the reasons stated herein, Defendants' Motion to Partially Dismiss

Plaintiffs' Amended Consolidated Complaint for Alleged Violations of ERISA (Clerk's No. 83)

is DENIED.

IT IS SO ORDERED.

Dated this ___17th___ day of May, 2011.

_____
ROBERT W. PRATT, Chief Judge
U.S. DISTRICT COURT