# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| IN RE PRINCIPAL U.S. PROPERTY ACCOUNT ERISA LITIGATION | Case No.  4:10-cv-00198-RP-TJS |
| | CLASS ACTION |
| This Document Relates To: | |
| All Actions. | |

## PLAINTIFFS' CORRECTED MOTION FOR CLASS CERTIFICATION

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 3

       A.    Summary of Relevant Facts ................................................................... 3

             1.    The Property Account ................................................................. 3

             2.    Defendants' Mismanagement of the Property Account ............ 3

             3.    The Withdrawal Queue ............................................................... 4

       B.    Proposed Class and Class Representatives ............................................ 5

       C.    Defendants ............................................................................................. 6

             1.    Management Fiduciary Defendants ............................................ 6

                   a.     Principal Real Estate ....................................................... 6

                   b.     PGI .................................................................................. 7

                   c.     Principal Life .................................................................. 7

             2.    Monitoring Defendants .............................................................. 8

                   a.     PMC ................................................................................ 8

       D.    Claims .................................................................................................... 8

III.   ARGUMENT ...................................................................................................... 8

       A.    Legal Standard ....................................................................................... 9

       B.    The Proposed Class Meets the Requirements of Rule 23(a) ................. 9

             1.    Numerosity ................................................................................. 9

             2.    Commonality ............................................................................ 10

             3.    Typicality ................................................................................. 12

             4.    Adequacy .................................................................................. 13

       C.    The Proposed Class Meets the Requirements of Rule 23(b) .............. 14

             1.    Common Questions of Law and Fact Predominate ................. 15

2.      A Class Action is Superior to Other Methods of Adjudication ........................................................................................... 17

D.      Rule 23(g) is Satisfied Here ................................................................................. 19

IV.     CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Alpern v. UtiliCorp United, Inc.*,
 84 F.3d 1525 (8th Cir. 1996) ............................................................................. 13

*Alvidres v. Countrywide Fin. Corp.*,
 No. 07-5810, 2008 WL 1766927 (C.D. Cal. Apr. 16, 2008) ................................ 11

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997) ......................................................................................... 9, 15

*Blades v. Monsanto Co.*,
 400 F.3d 562 (8th Cir. 2005) ............................................................................. 15

*Braden v. Wal-Mart Stores, Inc.*,
 588 F.3d 585 (8th Cir. 2009) ............................................................................. 15

*Califano v. Yamasaki*,
 442 U.S. 682 (1979) ............................................................................................. 8

*Caranci v. Blue Cross & Blue Shield of R.I.*,
 194 F.R.D. 27 (D.R.I. 2000) ............................................................................... 11

*Consol. Rail Corp. v. Town of Hyde Park*,
 47 F.3d 473 (2d Cir. 1995) ................................................................................... 9

*DeBoer v. Mellon Mortg. Co.*,
 64 F.3d 1171 (8th Cir. 1995) ............................................................................. 10

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*,
 431 U.S. 395 (1977) ........................................................................................... 12

*Forbush v. J.C. Penney Co.*,
 994 F.2d 1101 (5th Cir. 1993) ........................................................................... 11

*Gen. Tel. Co. of Sw. v. Falcon*,
 457 U.S. 147 (1982) ..................................................................................... 10, 13

*George v. Kraft Foods Global, Inc.*,
 251 F.R.D. 338 (N.D. Ill. 2008) ................................................................... 14, 19

*Hopkins v. Kansas Teachers Cmty. Credit Union*,
 265 F.R.D. 483 (W.D. Mo. 2010) ...................................................................... 18

*In re Aquila ERISA Litig.*,
 237 F.R.D. 202 (W.D. Mo. 2006) ................................................................ 10, 11

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
  No. MDL 1446, No. 01-3913, 2006 WL 1662596 (S.D. Tex. June 7, 2006) ....................... 12

*In re Principal U.S. Property Account Litig.*,
  No. 09-9889, 2010 WL 1645042 (S.D.N.Y. Apr. 22, 2010) ................................................. 18

*In re St. Jude Med., Inc.*,
  425 F.3d 1116 (8th Cir. 2005) ............................................................................................. 9

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
  644 F.3d 604 (8th Cir. 2011) ............................................................................................. 15

*Jones v. NovaStar Fin., Inc.*,
  257 F.R.D. (W.D. Mo. 2009) .............................................................................................. 14

*Kanawi v. Bechtel Corp.*,
  254 F.R.D. (N.D. Cal. 2008) ............................................................................................... 14

*Mace v. Van Ru Credit Corp.*,
  109 F.3d 338 (7th Cir. 1997) .............................................................................................. 18

*McDaniel v. N. Amer. Indem. N.V.*,
  No. 02-0422, 2003 WL 260704 (S.D. Ind. Jan. 27, 2003) ................................................. 11

*Paxton v. Union Nat'l Bank*,
  688 F.2d 552 (8th Cir. 1982) .................................................................................... 9, 10, 13

*Pegram v. Herdrich*,
  530 U.S. 211 (2000) ........................................................................................................... 15

*Rankin v. Rots*,
  220 F.R.D. 511 (E.D. Mich. 2004) ..................................................................................... 14

*Reis v. Humana Health Plan, Inc.*,
  No. 94-6180, 1997 WL 158337 (N.D. Ill. Mar. 31, 1997) ................................................. 11

*Ruppert v. Principal Life Ins. Co.*,
  252 F.R.D. 488 (S.D. Iowa 2008) ................................................................................. 12, 13

*Smith v. United Healthcare Servs. Inc.*,
  2002 WL 192565 (D. Minn. Feb. 5, 2002) ......................................................................... 12

*Sutton v. Med. Serv. Ass'n of Pa.*,
  1993 WL 273429 (E.D. Pa. July 20, 1993) ........................................................................ 12

*Wal-Mart v. Dukes*,
  131 S.Ct. 2541 (2011) ........................................................................................................ 11

**Rules**

Fed. R. Civ. P. 15(b)(2)...................................................................................................... 6

Fed. R. Civ. P. 23(a) ............................................................................................... passim

Fed. R. Civ. P. 23(b) .............................................................................................. passim

Fed. R. Civ. P. 23(g) ........................................................................................... 2, 19, 20

## I.    INTRODUCTION

This case is about the Defendants' failure to prudently manage the assets of the Principal U.S. Property Account (the "Property Account") an ERISA-governed investment vehicle in which a large number of ERISA plans throughout the country invested.[1]  The Property Account was a low to moderate risk fixed income fund, with a "strong focus" on liquidity sufficient to permit daily withdrawals.   However, Defendants' mismanagement of the Property Account created a severe liquidity shortage as a result of which Defendants "locked down" the Property Account, and prevented plan participants from withdrawing their retirement savings from the Property Account for more than 2 years.   During this two year period, investors sustained staggering losses both because the value of the Property Account plunged, and because the lockdown prevented participants from getting out of the Property Account and investing in other comparable "fixed income" type investments that, unlike the Property Account, recovered substantially during this period.

While some cases present close calls for class certification, this one does not.  The Property Account is what is known as a "unitary investment fund," in which the assets of all of the Property Account investors were pooled, commingled and centrally managed by Defendants.  The Property Account is not a mutual fund – rather, it is a special type of ERISA investment vehicle in which, by law, the operators are ERISA fiduciaries to the plan participants who invest in the fund. Significantly, neither the employer sponsors of the individual plans whose participants invested in the Property Account nor the participants themselves had any control over how Defendants managed the assets of the Property Account – only the Defendants had this control.  Defendants' management of the Property Account's assets thus affected all investors in the Property Account in

---

[1] Defendants are Principal Life Insurance Company, Principal Real Estate Investors, LLC, Principal Management Company, Principal Global Investors, LLC, and John Does 1-20 (collectively, "Principal" or "Defendants").  *See* Amended Consolidated Complaint For Violations Of The Employee Retirement Income Security Act Of 1974 ("Complaint"), Dkt. No. 81, ¶¶ 1, 25-30.

exactly the same way.  This is nowhere more obvious than in the Defendants' decision to lock down the Property Account.  Defendants – and Defendants alone – made this decision, and, thus, Defendants – and Defendants alone – prevented participants from withdrawing their retirement savings from the Property Account, and avoiding the losses caused by Defendants' mismanagement of the Property Account.

In order to prevail, Plaintiffs will need to prove that Defendants failed to manage the Account in accordance with its liquidity investment objective.  Plaintiffs expect to be able to meet this burden. However, whether they will or not is a question for another day.  At this stage, the question is whether it makes sense to adjudicate this case as a class action, where a common course of conduct by the Defendant-fiduciaries affected the Property Account participants in precisely the same way.  Plaintiffs respectfully submit that it does, and that the alternative – tens, hundreds, or even thousands of individual cases against the same fiduciaries, for the same alleged imprudence, causing the same harm – is needlessly inefficient and unworkable.  Accordingly, Plaintiffs David Engelbert, Eric Cruise, Michael Zall, and Greta De Kock (hereinafter proposed "Class Representatives") move this Court for an order under Fed. R. Civ. P. 23(a) and (b)(3) certifying a class of ERISA participants and beneficiaries who invested in the Property Account who were placed into the Withdrawal Queue and whose investment in the Property Account lost value while they were unable to withdraw their money from the Property Account.

In accordance with ERISA law, and established principals of Rule 23 jurisprudence, Plaintiffs' motion for class certification should be granted.  In addition, the Court should certify Plaintiffs Engelbert, Cruise, Zall, and De Kock as Class Representatives, and their counsel as Class Counsel under Rule 23(g).

## II.        BACKGROUND

A.        **Summary of Relevant Facts**

1.        **The Property Account**

The Property Account is an open-end, commingled, insurance company separate account invested primarily in commercial real estate holdings.  *See* Answer to Amended Complaint ("Answer") ¶ 31.  The Property Account was offered to ERISA protected defined contribution plans.  Defendants "pooled and commingled" the money received from these investors, used it to purchase real estate assets (Answer ¶ 34), and otherwise managed the retirement savings invested in the Property Account.  Each participant was "assigned units reflecting an interest in the Property Account as a whole", and these units reflect "appreciation or depreciation on a pro rata basis." Defendants' Answers and Objections to Plaintiffs' First Requests for Admissions, Aug. 19, 2011 ("Admissions"), at Nos. 5, 7 (attached to the Declaration of Cari C. Laufenberg in Support of Plaintiffs' Motion for Class Certification ("Laufenberg Decl.") as Exhibit 1).  The Property Account was centrally managed by Defendants in the same way for all investors in the Account, and "no investor in the [Property] Account retained an interest in any Account asset that was managed separately for such investor." *Id*. at No. 6.

Prior to the imposition of the Withdrawal Queue in September of 2008, the Property Account was classified as a low risk, fixed income retirement savings option that was to be managed with a "strong focus on liquidity" sufficient to provide for daily withdrawals.  Complaint ¶¶ 45-46.

2.        **Defendants' Mismanagement of the Property Account**

In the months and years leading up to the imposition of the Withdrawal Queue, Defendants breached their fiduciary duties to investors in the Property Account by grossly mismanaging the assets invested in the Property Account in at least four ways: 1) by failing to adopt and implement

an adequate liquidation strategy; 2) by failing to manage liquidity appropriately even in accordance with the imprudent strategy Defendants actually adopted; 3) by relying on substantial net inflows of capital from investors and disregarding the substantial deterioration in cash flow from investors that occurred after 2005; and 4) by pursuing imprudent portfolio management strategies, including the continued acquisition of major properties at imprudent prices, after a prudent fiduciary would have begun attempting to reduce the portfolio's risk exposure. Complaint ¶¶ 47-88.

      **3.**       **The Withdrawal Queue**

On September 26, 2008, Defendants closed the Property Account to normal withdrawals and implemented a "Withdrawal Queue."  Answer ¶ 77.  Defendants provided no advance notice to investors of Principal's decision to freeze withdrawals or implement the Withdrawal Queue.  *Id.* After imposing the Withdrawal Queue, Principal altered the Property Account's investment objectives and philosophy by:

    a.      removing references to the Property Account's objective: "to maintain appropriate liquidity so that clients can make daily contributions or withdrawals;"

    b.      removing language suggesting that the Property Account is "open to contributions and withdrawals daily;" and

    c.      removing language regarding the Property Account's "philosophy" that low to moderate fund level risk is accomplished by operating with a "strong liquidity focus."

Complaint ¶¶ 79-80.

Investors who attempted to withdraw their retirement savings from the Property Account or transfer them to another investment option were placed into the Withdrawal Queue, and watched the value of these savings plummet. Defendants did not begin releasing money to the investors in the Withdrawal Queue until January of 2010, and the last distributions were not made until October of 2010, more than two years after the Withdrawal Queue had been imposed.  *See* Defendants' Brief in Support of Its Motion to Partially Dismiss Plaintiffs' Amended Consolidated Complaint ("MTD")

at 6, n.5.  These distributions, however, were made at substantially lower prices per share than at the time investors placed their withdrawal requests with Principal.

**B.**      **Proposed Class and Class Representatives**

The Class Representatives seek to bring this action on behalf of themselves and a class consisting of all other similarly situated ERISA defined contribution plan participants and beneficiaries who have attempted to withdraw their investment from the Property Account, and whose plans have suffered losses because they were instead placed into the Withdrawal Queue.  In particular, Plaintiffs seek to certify the following Class:

> All qualified ERISA defined contribution plan participants and beneficiaries that, between September 26, 2008 and the present (the "Class Period"), were invested directly or indirectly in the Principal U.S. Property Account through their ERISA plan, were placed in the Withdrawal Queue, and suffered a loss during the Class Period as a result of the Defendants' mismanagement of the Property Account. Specifically excluded from the Class are the Individual Defendants herein, officers and/or directors of the Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which a Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party, other than the participants or beneficiaries of qualified ERISA defined contribution plans offered by Principal or any of its affiliates to its employees and which suffered losses due to investment in the Principal U.S. Property Account.[2]

On behalf of this putative Class, the Class Representatives seek to recover losses suffered by these plans, as well as other equitable and injunctive relief.

Each of the Class Representatives was a participant or beneficiary in an ERISA defined contribution plan, and each was placed into the Withdrawal Queue.  Complaint ¶¶ 15-23.  Each saw the value of their plan investment in the Property Account drop significantly while they were trapped in the Withdrawal Queue.  *Id.*

---

[2] The first sentence of the class definition herein is modified slightly from that in the Complaint in order to provide greater clarity and does not substantively affect the scope of the class in any way.

## C.    Defendants

The Complaint names four[3] entities as Defendants: Principal Life, Principal Real Estate, PGI, and PMC.  There is no dispute that each of these entities is an ERISA fiduciary with respect to the Property Account.  Principal Real Estate and PGI are ERISA fiduciaries by virtue of their management and control of the ERISA plan assets in the Property Account (hereinafter "Management Fiduciaries"); PMC is a fiduciary because it has the authority to appoint and remove Management Fiduciaries for the Property Account, and as such has the ERISA fiduciary duty to monitor such Management Fiduciaries (hereinafter "Monitoring Fiduciary"); and Principal Life serves as both a Management Fiduciary and Monitoring Fiduciary.  Complaint ¶¶ 25-27, 29, 89-96, 98.

### 1.    Management Fiduciary Defendants

#### a.    Principal Real Estate

Principal Real Estate was and is the portfolio manager for the Property Account.  According the Defendants, Principal Real Estate is "a wholly-owned subsidiary of PGI, an indirect subsidiary of PFG and Principal Life, a registered investment advisor which acts as an investment advisor for the Property Account, *and an ERISA fiduciary with respect to the investment and reinvestment of Property Account assets*."  Answer ¶ 26.  In addition, "Principal Real Estate managed the investments in the Property Account…." *Id.* ¶ 94.  Its personnel "serve as portfolio managers with day-to-day responsibility for investment decisions regarding the [Property] Account's real estate assets" (Defendants' Memorandum of Law in Support of Motion to Transfer Venue to the Southern District of Iowa, No. 09-9889, Dkt. No. 32 ("Motion to Transfer"), at 4), and it "is responsible for

---

[3] A fifth entity, Principal Financial Group ("PFG"), was voluntarily dismissed based on Defendants' representations that Principal Life, rather than PFG, had the responsibility for monitoring the Property Account's portfolio managers.  *See* MTD at 20.  While Principal Life is presently named as a Management Fiduciary, Plaintiffs have not yet amended their Complaint in order to name Principal Life as a Monitoring Fiduciary as well.  At the appropriate juncture, Plaintiffs intend to amend in order to conform the pleadings to the evidence pursuant to *e.g.*, Fed. R. Civ. P. 15(b)(2).

ongoing monitoring of the [Property] Account, including monitoring liquidity levels in the [Property] Account." Declaration of Teri Button in Support of Defendants' Motion to Transfer Venue to the Southern District of Iowa, No 09-9889, Dkt. No. 32-2 ("Button Decl.") at 17.

###   b.    PGI

PGI is "a wholly owned subsidiary of Principal Life, a diversified asset management organization," "provides investment advisory services" to the Property Account, and "*is an ERISA fiduciary only with respect to the investment and reinvestment of Property Account assets*…." Answer ¶ 27.

###   c.    Principal Life

In their Motion to Dismiss, Defendants admitted that "The Amended Complaint correctly alleges that Principal Life is a fiduciary of the Property Account by virtue of its control over the Account." MTD at 7-8 (citing Complaint ¶ 25). As such, "Principal Life established and maintains the Property Account—an 'insurance company separate account' of Principal Life – and, through Principal Life's employees and subsidiaries, Principal Life manages the retirement plan assets in the Property Account. Principal Life's Investment Committee and Real Estate Committee review, approve and supervise all real estate asset transactions involving Principal Life assets as well as the retirement savings invested in the Property Account." Complaint ¶ 25; *see also* Button Decl. at 15-16 (explaining that these committees reviewed and approved Property Account purchases).

In addition, Principal sent a "Q&A" document relating to the Property Account and Withdrawal Queue to many pension plan sponsors which explained that "Principal Life Insurance Company is a fiduciary with regard to the management of the [Property] Account; it has a responsibility to establish procedures, including the withdrawal limitation, to mitigate situations that could cause harm to the [Property] Account or the participants in the account." D-ERISA-000459

(submitted as Exhibit A to Plaintiffs' Motion For Leave To File An Exhibit To Motion For Class Certification Under Seal).

### 2. Monitoring Defendants

#### a. PMC

Defendant PMC is a subsidiary of PGI.  PMC provides investment advisory services to the Property Account. PMC entered into an agreement with Principal Real Estate entitled "Investment Guidelines," by which PMC would monitor the performance of the Property Account and Principal Real Estate Investors.  Because PMC had the discretionary authority to monitor Principal Real Estate and the Property Account, PMC was subject to ERISA's fiduciary duties while it carried out that role.

### D. Claims

Defendants' misconduct gives rise to two distinct causes of action under ERISA § 502(a)(2):

- **Count I: Failure to Prudently and Loyally Manage the Assets of the Property Account** (against Principal Life, Principal Real Estate, and PGI).  In Count I, Plaintiffs allege that Defendants, in violation of ERISA § 404(a)(1)(B), imprudently failed to manage the assets of the Property Account consistent with the Property Account's investment objective to maintain a strong focus on liquidity sufficient to permit daily withdrawals, at a low-to-moderate risk level appropriate for a fixed income retirement savings fund.

- **Count II: Failure to Monitor Fiduciaries** (against PMC). In Count II, Plaintiffs allege that Defendants, in violation of ERISA § 404(a)(1)(B), imprudently failed to monitor the conduct of the management fiduciaries, thereby allowing the management fiduciaries to deviate from the Property Account's investment objective to maintain a strong focus on liquidity sufficient to permit daily withdrawals, at a low-to-moderate risk level appropriate for a fixed income retirement savings fund.

### III.  ARGUMENT

A class action is "peculiarly appropriate" when a case raises legal issues "common to the class as a whole," because in such a case Rule 23 provides an economical vehicle for the resolution of multiple common claims.  *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979).  The ERISA claims at issue here are just such common claims.

A.      **Legal Standard**

In order to be certified as a class action, the proposed Class must meet the four requirements of Fed. R. Civ. P. 23(a): numerosity, commonality, typicality, and adequacy. Plaintiff must also satisfy at least one or more subsections of Fed. R. Civ. P. 23(b).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997);  *In re St. Jude Med., Inc*., 425 F.3d 1116, 1119 (8th Cir. 2005). Because the Rule 23 standards are satisfied here, this action merits certification.

B.      **The Proposed Class Meets the Requirements of Rule 23(a)**

1.      **Numerosity**

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable."  The "most obvious" factor relevant to the numerosity inquiry is "the number of persons in the proposed class."  *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982). While discovery has not yet sufficiently progressed to allow Plaintiffs to state precisely how many participants and beneficiaries are in the Class, documents produced by Defendants indicate that 139,355 ERISA defined contribution plan participants and beneficiaries were placed into the Withdrawal Queue.  *See* Laufenberg Decl. at ¶ 5.  Although most, if not all, investors suffered losses due to the large per share price decline during the imposition of the Withdrawal Queue, because the data provided by Defendants is currently incomplete, it is impossible at this juncture to determine how many of these individuals suffered losses while waiting in the Withdrawal Queue. *Id.* at ¶ 6.  Needless to say, joinder of the 139,355 individuals in the Withdrawal Queue would clearly be "impracticable" under Rule 23(a)(1), *see Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members"), and this requirement is therefore met.

### 2.    Commonality

Class certification is "'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and 'turn on questions of law applicable in the same manner to each [class] member.'" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982).  While Rule 23(a)(2) does not require that every question of law or fact be common to each member of the class, commonality is established when "the legal question 'linking the class members is substantially related to the resolution of the litigation.'" *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (quoting *Paxton*, 688 F.2d at 561); *see also In re Aquila ERISA Litig.*, 237 F.R.D. 202, 209 (W.D. Mo. 2006).

In this case, the Property Account was a single, unitary investment fund, in which the retirement savings for all of the class members were "pooled and commingled."  Answer ¶ 34. The Class Members' shares represented a percentage of the Property Account "as a whole" (Admissions, at Nos. 5, 6, 7), and saw the rise and fall of the value of their investments on "pro rata basis." *Id*. at No. 7.  Moreover, once the assets were pooled, Defendants centrally managed these investments, and their decisions affected all investors in the Property Account in precisely the same manner.  Likewise, Defendants' implementation of the lockdown – or Withdrawal Queue – was a common course of conduct affecting all investors in the Withdrawal Queue.  They were all stuck in the same proverbial boat – the Property Account.

Under these circumstances, commonality is easily satisfied.  The legal questions linking the Class members – for example, whether the Property Account was properly managed for liquidity, and whether the lockdown and consequent losses were the result of Defendants' imprudent management of the Property Account – unquestionably are related to the resolution of the litigation. They are the core issues in this case – and the alleged bases for the harms that unify the Class members.

If the Court determines that Defendants failed to manage the assets of the Property Account prudently in light of the Property Account's investment goals and characteristics, then the answer to that question will be the same for all Class Members. *See, e.g.*, *Alvidres v. Countrywide Fin. Corp.*, No. 07-5810, 2008 WL 1766927, at *2 (C.D. Cal. Apr. 16, 2008) (commonality in ERISA breach of fiduciary case established where, as here, "all claims and all alleged injuries arise from the very same alleged conduct by the same Defendants—i.e., all putative Plaintiff's claims 'stem from the same source'").

Unlike the claims at issue in *Wal-Mart v. Dukes*, 131 S.Ct. 2541 (2011), which involved different decisions made by different agents of the defendant at different times, each of which affected individual class members or groups of class members in different ways, Defendants' conduct here impacted Class Members precisely the same way—in fact, because the Property Account was a commingled pool of assets, it was ***exactly*** the same management of those assets (undifferentiated for purposes of management) by Defendants that impacted all of the Class Members.

Nor is the fact that the Class Members are from different ERISA plans an obstacle to commonality. Numerous courts have found that such classes satisfy the commonality requirement where, as here, Defendants' conduct impacted all of the Class Members in the same way. *E.g.*, *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993) (reversing denial of class certification of class consisting of participants in four different ERISA plans with the same fiduciary when the claims involved the fiduciary's "general practice" applicable to all four plans); *Caranci v. Blue Cross & Blue Shield of R.I.*, 194 F.R.D. 27, 39-40 (D.R.I. 2000) (certifying class of participants in different plans); *McDaniel v. N. Amer. Indem. N.V.*, No. 02-0422, 2003 WL 260704 (S.D. Ind. Jan. 27, 2003); *Reis v. Humana Health Plan, Inc.*, No. 94-6180, 1997 WL 158337 (N.D. Ill. Mar. 31, 1997); *Smith v. United Healthcare Servs. Inc.*, 2002 WL 192565 (D. Minn. Feb. 5,

2002); *Sutton v. Med. Serv. Ass'n of Pa.*, 1993 WL 273429 (E.D. Pa. July 20, 1993); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. MDL 1446, No. 01-3913, 2006 WL 1662596 (S.D. Tex. June 7, 2006).

In addition, unlike the decision in *Ruppert v. Principal Life Ins. Co.*, 252 F.R.D. 488 (S.D. Iowa 2008), there is no question in this case that Defendants' fiduciary status arises from conduct that is common to the entire class. In *Ruppert*, the central question was whether fees charged by Principal were inadequately disclosed or so excessive that they amounted to a breach of fiduciary duty. *Id.* at 493. The Court found that because those fees were determined pursuant to individual contracts between Principal and each of the plans in question, Principal's fiduciary status had to be determined on an examination of the contract between Principal and each plan, on a plan-by-plan basis, thus negating both commonality and typicality. *Id.* at 498-499. Here, on the other hand, Defendants have conceded their fiduciary status with regard to all investors in the Property Account. Answer ¶¶ 25-27; MTD at 7-8. Hence, it will not be necessary to examine any contract with any Plan in order to determine Defendants' fiduciary status. Moreover because the case concerns Defendants' management and control of the retirement assets invested in the Property Account – a centralized function for which they alone are responsible – the individual agreements between Principal and any plan have no bearing on the fiduciary conduct at issue. Thus, the commonality requirement is plainly satisfied here.

### 3. Typicality

Rule 23(a)(3)'s typicality requirement examines whether the proposed class representative has the same interests and seeks a remedy for the same injuries as other class members. *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). The burden of typicality "is fairly easily met so long as other class members have claims similar to the named plaintiff," and "[f]actual variations in the individual claims will not normally preclude class certification if the claim arises

from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). While commonality and typicality are separate requirements under Rule 23(a), they entail very similar inquiries and "tend to merge," and are often addressed together. *See Ruppert*, 252 F.R.D. at 492 (citing *Gen. Tel. of the S.W.*, 457 U.S. at 157 n.13).

For the same reasons that Plaintiffs' claims are common to all Class Members, they are also typical of the claims of each Class Member. Each of the Class Representatives invested in the Property Account, was placed in the Withdrawal Queue, and suffered losses while waiting for Principal to honor their withdrawal or transfer requests. Further, each Class Representative's claim and the claim of each Class Member "arise[] from the same event or course of conduct" – Defendants' (mis)management of the Property Account's assets, and "give[] rise to the same legal or remedial theory" – here, claims under §§ 409 and 502(a)(2) of ERISA. *Alpern*, 84 F.3d at 1540. As such, the requirement of typicality is easily satisfied in this case.

### 4.    Adequacy

Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequacy of representation entails a two-pronged inquiry: whether "(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562-63. Here, the proposed Class Representatives are each ERISA plan participants who invested in the Property Account, each of whom attempted to withdraw or transfer their retirement savings from the Property Account, and each of whom was placed into the Withdrawal Queue. Each of these proposed Class Representatives saw the value of their investment in the Property Account decline while waiting in the Withdrawal Queue. Like other members of the Class, the proposed Class Representatives seek to maximize the recovery to

the putative Class through this litigation. *See Jones v. NovaStar Fin., Inc.*, 257 F.R.D. at 181, 192

(W.D. Mo. 2009); *Kanawi v. Bechtel Corp.*, 254 F.R.D. at 102, 111 (N.D. Cal. 2008).  None of the

proposed Class Representatives have a unique relationship with any of the Defendants, nor do they

have any interest that is antagonistic to the claims of any Class Member.  Indeed, as noted above,

their claims are identical to the claims belonging to each of the Class Members, and they (or any

other plaintiff or representative) will have to prove Defendants' liability on the basis of common

facts underlying those claims. *George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 348 (N.D. Ill.

2008). The proposed Class Representatives' interests are thus fully aligned with the interests of

other Plan participants.

Furthermore, the proposed Class Representatives are willing and able to take the required

role in the litigation to protect the interests of those he or she seeks to represent.  As one district

court has noted, it is sufficient for purposes of an ERISA case if a proposed class representative

"understands that she had a retirement plan and believes that defendants failed to protect the money

in the Plan" and further, that she "understands her obligation to assist her attorneys and testify."

*Rankin v. Rots*, 220 F.R.D. 511, 521 (E.D. Mich. 2004).  Each of the Class Representatives has that

required understanding.

In addition, as discussed *infra* section III.D, the proposed Class Representatives have

retained counsel with significant experience in federal class actions, in particular ERISA cases.

**C.      The Proposed Class Meets the Requirements of Rule 23(b)**

Rule 23(b)(3) certification requires a court to find "that the questions of law or fact common

to class members predominate over any questions affecting only individual members, and that a

class action is superior to other available methods for fairly and efficiently adjudicating the

controversy."  Fed. R. Civ. P. 23(b)(3).

As demonstrated below, common questions of law and fact clearly predominate because Plaintiffs all suffered the same injury, by the same misconduct, in the same manner, and by the same ERISA fiduciaries who managed and controlled the Property Account.    As further demonstrated below, a class action is the most efficient means to litigate claims of the Plaintiffs and those of the Class, thus satisfying the second condition of 23(b)(3).

### 1.    Common Questions of Law and Fact Predominate

Rule 23(b)(3)'s requirement that common issues of fact or law must predominate over individual questions "tests whether proposed class members are sufficiently cohesive to warrant adjudication by representation."  *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 618 (8th Cir. 2011) (quoting *Amchem Prods.*, 521 U.S. at 623).   "Individual issues are those which require 'evidence that varies from member to member' to make a prima facie showing. [] Common questions are those for which a prima facie case can be established through common evidence." *In re Zurn Pex*, 644 F.3d at 618 (citing *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)). The predominance inquiry under Rule 23(b)(3) requires that a court "look only so far as to determine whether, given the factual setting of the case, if the plaintiffs' general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Blades*, 400 F.3d at 566.

A claim for breach of fiduciary duty under ERISA § 502(a)(2) requires a showing that defendants acted as fiduciaries, breached their duties of prudence and loyalty, and thereby caused harm to a plan or plans.  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594-95 (8th Cir. 2009) (citing *Pegram v. Herdrich*, 530 U.S. 211, 225–26 (2000)).   Claims under § 502(a)(2) are thus likely to be predominated by common issues of fact or law, because the establishing of a *prima facie* case does not turn on individual issues, but on the misconduct of plan fiduciaries and the resulting losses.

Here, common issues clearly predominate.  Plaintiffs and the members of the proposed Class all invested, through their retirement plans, in the Property Account during the Class Period. Defendants are the admitted fiduciaries of the Property Account with exclusive responsibility for managing the assets of the account.  Plaintiffs all suffered losses due to the same fiduciary breaches by Defendants, including the failure to prudently invest and manage Property Account assets in accordance with the Account's own objectives and philosophy, and the failure to maintain adequate liquidity.  Plaintiffs and Class Members, by definition, all suffered harm as a result of being placed in the Withdrawal Queue – which was instituted simultaneously and without warning to any Class member by Defendants – when Plaintiffs requested withdrawal of funds and were denied, forcing them to watch powerlessly as their retirement investments continued to decline in value.

The questions of law and fact common to the Class include core issues such as:  (a) whether Defendants breached their fiduciary duties under ERISA; (b) whether Defendants deviated from the objectives and philosophies of the Property Account when they failed to ensure the Account would have adequate liquidity; (c) whether Defendants' acts proximately caused losses to the plans at issue; and (d) whether Defendants are equitably liable to the Class for disgorgement of ill gotten fees from imprudent fiduciary conduct, equitable tracing, restitution, the imposition of a constructive trust, and/or other equitable or injunctive relief.

Further, the Property Account held assets in a single commingled account, in which the assets of every plan that invests in the Property Account are pooled, and, therefore, Defendants' imprudent actions affected all plans that invested in the Property Account in the same manner. Resolution of the issue of whether Defendants imprudently managed the Property Account as alleged in the Complaint will resolve all Class Members' claims.  Moreover, damages may be readily determined by application of a formula, to be more precisely determined by experts, which

may be applied in the same manner to each Class Member's alleged loss suffered as a result of being placed in the Withdrawal Queue.[4]

Any questions relating only to individual Class Members would be minor compared to common questions, because the gravamen of Plaintiffs' complaint does not rest on individual relationships or communications between Defendants and various Class Members or their plans, but rather on the mismanagement of the Property Account itself, i.e., conduct generally applicable to the Class, by the same defendants, which proximately caused losses for all Class Members in the same manner.  Likewise, contracts with the individual plans in the Class have no bearing on the allegations because Defendants were exclusively responsible for managing the assets of the Property Account – and, thus, their actions affected all plans that invested in the Property Account uniformly.  Given the uniform nature of Defendants' alleged imprudence, common questions predominate over any purported individual issues.

## 2.    A Class Action is Superior to Other Methods of Adjudication

To satisfy Rule 23(b)(3), a class action must also be superior to other case management tools.  Fed. R. Civ. P. 23(b)(3).  Here, according to the information provided by Defendants, the proposed Class is comprised of 139,355 plan participants from over 12,000 plans whose ERISA claims can be resolved efficiently in this single proceeding.  In assessing the superiority of a class action to other methods of adjudication, courts look at factors including "[1] the class members' interest in individual control of case prosecution or defense… [2] the extent and nature of any litigation a class member may have already begun… [3] the desirability, or lack thereof, of concentrating the litigation of the claims in this forum[,] and… [4] the potential difficulties in managing the class action." *Hopkins v. Kansas Teachers Cmty. Credit Union*, 265 F.R.D. 483, 489

---

[4] The actual calculation of each Class Member's damages "is not central to Plaintiffs' claims and do[es] not undermine the predominance requirement." *Hopkins v. Kansas Teachers Cmty. Credit Union*, 265 F.R.D. 483, 488 (W.D. Mo. 2010).

(W.D. Mo. 2010); Fed. R. Civ. P. 23(b)(3).  All of these factors, as applied to this case, demonstrate that a class action is the best and most efficient means for resolving this controversy.

With regard to the first factor, because most individual Class Members' claims are likely to be for relatively small damage amounts (relative to the cost of litigation), prosecuting such claims on an individual basis would be cost-prohibitive.  *See*, *e.g., Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 343 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").  Therefore, Class Members' interests are better served by a class action, rather than individual suits.

Regarding the second factor, Plaintiffs know of no ongoing litigation which has already begun and not been effectively consolidated with this action before this Court.

As to the third factor, in her order transferring the instant action to this Court, Judge McMahon already found that concentrating the litigation in this forum is desirable due to considerations of the convenience of the parties and key witnesses.  *See In re Principal U.S. Property Account Litig.*, No. 09-9889, 2010 WL 1645042 (S.D.N.Y. Apr. 22, 2010).

Finally, the fourth factor is easily satisfied as there is little or no foreseeable difficulty in administering this matter as a class action.  The Class is limited to those persons who requested withdrawal of their funds and where placed in the Withdrawal Queue – all people who would have exited the Account if they had been allowed to do so.  Defendants possess all records concerning the Withdrawal Queue, including records of the denials and, once the lock-down had been lifted, subsequent pay-outs to shareholders who were placed in the Withdrawal Queue.  Motion to Transfer at 15-17.  Hence, determining the members of the Class will not be difficult.  Nor will it be difficult to adjudicate the legal issues in this case on behalf of the entire Class.  The focus of the litigation is

Defendants' management of the Property Account –a centralized function that was the same for every Class Member.

**D.      Rule 23(g) is Satisfied Here**

Rule 23(g) complements the requirement in Rule 23(a)(4) that class representatives adequately represent the interest of Class Members by focusing on the qualifications of class counsel.  In short, Rule 23(g)(1)(B) requires that the attorneys appointed to serve as class counsel "fairly and adequately represent the interests of the class."  Further, Rule 23(g)(1)(A) specifically instructs a court to consider: (1) the work counsel has done to identify or investigate potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.

Here, each of these considerations weighs in favor of Class Counsel's adequacy.  As set forth in the accompanying Laufenberg Decl. at ¶¶ 7-8, proposed Class Counsel are highly experienced in successfully handling class actions, and specifically ERISA breach of fiduciary duty class actions. As lead counsel, Keller Rohrback L.L.P. has pioneered the field of large-scale ERISA breach of fiduciary duty class action litigation and the firm is a national leader in this area. *Id*. at ¶ 7. Keller Rohrback has served as lead or co-lead counsel in many important ERISA class action cases, including *In re Enron Corp. ERISA Litig.*, No. 01-3913 (S.D. Tex.), *In re WorldCom, Inc. ERISA Litig.*, No. 02-4816 (S.D.N.Y.), *In re Global Crossing Ltd. ERISA Litig.*, No. 02-7453 (S.D.N.Y), as well as numerous others throughout the country.  *Id*. at ¶ 8 (listing examples of cases in which Keller Rohrback has served as lead or co-lead counsel).

Proposed Class Counsel at Keller Rohrback have devoted significant effort to identifying and investigating the claims in this action.  Proposed Class Counsel researched and drafted the operative Complaint, have vigorously and successfully defended against Defendants' efforts to

19

dismiss the Complaint, and are currently conducting discovery. *Id*. at ¶ 9. Going forward, as proposed Class Counsel, Keller Rohrback will commit the time and resources necessary to fully develop the case for trial. In addition, proposed Class Counsel have associated qualified proposed Liaison Counsel at Babich Goldman Cashatt & Renzo who will assist with the litigation, as well as the law firm of Wolf Popper LLP, a nationally recognized firm in business for over 65 years, specializing in complex class action litigation, which has worked throughout this case with Keller Rohrback. Thus, as Class Counsel, Keller Rohrback L.L.P., with assistance from Babich Goldman Cashatt & Renzo, and Wolf Popper, will vigorously, fairly, and adequately represent the interests of the proposed Class, as required by Rule 23(g).

## IV.     CONCLUSION

Accordingly, Plaintiffs respectfully request that this Court (i) certify this Action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (ii) appoint Plaintiffs Cruise, de Kock, Engelbert and Zall as Class Representatives; and (iii) appoint Keller Rohrback L.L.P. as Lead Counsel for the Class, and Babich Goldman Cashatt & Renzo as Local Counsel. Plaintiffs respectfully request oral argument on this motion.

Dated:  December 1, 2011                  Respectfully submitted,

                                         KELLER ROHRBACK, L.L.P.

                                         By:/s/ Cari C. Laufenberg
                                             Derek W. Loeser (DL-6712)
                                             Lynn L. Sarko (LS-3700)
                                             Cari Campen Laufenberg (CCL-5571)
                                             KELLER ROHRBACK L.L.P.
                                             1201 Third Avenue, Suite 3200
                                             Seattle, Washington 98101
                                             Telephone: (206) 623-1900
                                             Facsimile: (206) 623-3384
                                             dloeser@kellerrohrback.com
                                             lsarko@kellerrohrback.com
                                             claufenberg@kellerrohrback.com

KELLER ROHRBACK P.L.C.
Ron Kilgard (RK-7139)
Gary A. Gotto (GG-5640)
James A. Bloom (JB-6257)
3101 N. Central Ave., Suite 1400
Phoenix, Arizona  85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822
rkilgard@kellerrohrback.com
ggotto@kellerrohrback.com
jbloom@kellerrohrback.com

***Interim Lead Counsel for Plaintiffs***

David Harris Goldman
dgoldman@babichlaw.com
Kodi Ann Brotherson
kbrotherson@babichlaw.com
Michael J. Carroll
mcarroll@babichlaw.com
BABICH GOLDMAN CASHATT & RENZO PC
100 COURT AVE, STE 403
DES MOINES, IA 50309-2296
Telephone: (515) 244-4300
Facsimile:  (515) 244-2650

***Local Counsel for Plaintiffs***

Andrew E. Lencyk
WOLF POPPER LLP
845 Third Avenue
New York, New York 10022
Telephone: (212) 759-4600
Facsimile:(212) 486-2093
alencyk@wolfpopper.com

***Counsel for Plaintiff Eric Cruise***

**CERTIFICATE OF SERVICE**

    I, Cari C. Laufenberg, hereby certify that on December 1, 2011 a copy of PLAINTIFFS' CORRECTED MOTION FOR CLASS CERTIFICATION was filed electronically, and is being served electronically this date upon all involved parties participating in the Court's electronic filing system or first-class mail, postage pre-paid.

Dated: December 1, 2011

            By _/s/ Cari C. Laufenberg_____
               Cari C. Laufenberg